Brown v. Baxter.

## C. O. F. BROWN V. E. BAXTER *et al.*

### No. 15,317.   (94 Pac. 155.)

### SYLLABUS BY THE COURT.

1. DESCENTS AND DISTRIBUTIONS—*Personal Property.*   The equitable title to the personal estate of an intestate descends at once to his heirs at law, subject only to the debts of the decedent.   The legal title to the estate passes to the administrator, when appointed, for the purpose of enabling him to pay the debts due from the estate.

2. ADMINISTRATORS—*Appointment Unnecessary—Agreement by Heirs.*   No administration of the personal estate of an intestate is necessary when there are no creditors.   The heirs in such case may divide the assets of the estate among themselves, in kind or otherwise, by mutual agreement.   When so divided each will become the owner in severalty of the portion so received.

3. LIMITATION OF ACTIONS—*Creditor of an Estate.*   Where no administrator has been appointed the claim of a creditor will become barred by the statute of limitations at the end of three years after the last date on which an administrator might have been appointed.

4. EVIDENCE—*Foreign Statutes.*   The statutes of another state cannot be considered in this court upon a review of a case unless they have been established as facts in the trial court and preserved in the record.

5. FOREIGN RECORDS—*Authentication.*   Certificates of authentication examined and found to be sufficient under the statutes of the United States.

Error from Marion district court; OSCAR L. MOORE, judge.   Opinion filed January 11, 1908.   Affirmed.

7—77 KAN.

Opinion denying a petition for a rehearing filed February 18, 1908.

### STATEMENT.

THIS is a suit by E. Baxter to recover judgment upon a promissory note and to foreclose a real-estate mortgage given to secure the same. The suit was commenced in the district court of Marion county June 20, 1906.

The petition states fully the facts constituting plaintiff's cause of action. The separate answer of the plaintiff in error admits the execution of the note and mortgage but denies generally the other allegations of the petition. This part of the answer is verified. There is also a plea of the statute of limitations. The reply denies that the cause of action is barred by the statute of limitations. Upon these issues the case was tried to the court without a jury. Special findings of fact were filed by the court, which, except immaterial parts, read:

"(1) On March 10, 1890, the defendants Louisa L. Baker and Robert H. Baker, her husband, executed and delivered to the defendant A. Jacobitz their promissory note in the sum of seven hundred dollars ($700), due and payable on the 10th day of March, 1893, with twelve per cent. (12%) interest after maturity.

"(2) That to secure the payment of the above-described note the said Louisa L. Baker and Robert H. Baker, her husband, executed and delivered to the said A. Jacobitz, the defendant herein, their certain real-estate mortgage, dated the same date as the note, March 10, 1890, upon the following-described real estate . . . in Marion county, Kansas, which said real-estate mortgage was recorded in the office of the register of deeds of Marion county, Kansas, on March 12, 1890.

"(3) That afterward, and within three years from the date of said promissory note, the said A. Jacobitz, for a valuable consideration, and before the maturity of said note, sold, assigned and delivered the said promissory note and mortgage to John Buchanan by written indorsement indorsed on said promissory note.

"(4) That on the 4th day of March, 1895, the said John Buchanan died intestate, leaving the following-named heirs, to wit: Mary Jane Buchanan, widow; William H. Buchanan, son; Samuel Buchanan, son; Nancy B. Vosbinder, daughter; four children of Susannah Rutledge, daughter, deceased, to wit: Charles Rutledge, Mary Rutledge, Ross Rutledge and Ira Lee Rutledge; John N. Buchanan, son. The said Ira Lee Rutledge being a minor at said time.

"(5) That prior to the death of said John Buchanan he had loaned, upon real-estate securities, sixteen hundred dollars ($1600) of his wife's money, and the said John Buchanan had taken the securities for said loans in his own name, and at the time of his death the said $1600 which the said John Buchanan had loaned for and in behalf of his wife had not been returned to his said wife, Mary Jane Buchanan, nor had she any securities therefor.

"(6) On March 30, 1895, all of the above-named heirs of John Buchanan, for the purpose of settling up and distributing the estate of John Buchanan without the expense of administration, met and organized themselves as the heirs of John Buchanan, deceased. They elected a chairman, president and secretary, and kept a record of the proceedings of such organization of heirs. They appointed one Samuel Buchanan as the agent and representative of such heirs to make due and proper settlement of the estate, subject to the approval of the heirs themselves. The said Samuel Buchanan, as representative and agent of said heirs, collected all of the assets of said estate and paid all of the debts owing by the said John Buchanan at the time of his death, which debts were of a very insignificant amount. And the said organization of heirs held meetings from time to time, up to and including December 16, 1898; at the meeting of the said heirs all of the heirs were represented, either in person or by their duly qualified guardian or authorized agents.

"(7) That at one of the meetings of the said organization of heirs of the said John Buchanan it was mutually agreed and ordered that in consideration of the said $1600 of money belonging to the widow, Mary Jane Buchanan, which had been loaned upon real estate prior to John Buchanan's death, and was a part of her distributive share of said estate, said above-described promissory note of seven hundred dollars ($700),

signed by Louisa L. Baker and Robert H. Baker, her husband, and secured by the mortgage as above described, together with other notes and mortgages belonging to the estate of John Buchanan, should be turned over and become the property of the said Mary Jane Buchanan, widow of the said John Buchanan, deceased, and the same was, about April 9, 1895, thus turned over and delivered to the said Mary Jane Buchanan as her individual property.

"(8) That on or about the 9th day of March, 1905, the said Mary Jane Buchanan for a valuable consideration sold and delivered said promissory note and mortgage, above described, to the said E. Baxter, plaintiff in this action.

"(9) That on the 17th day of November, 1893, the said mortgagors, Louisa L. Baker and Robert H. Baker, her husband, for a valuable consideration, executed and delivered to one C. E. Malcomb their deed, and thereby conveyed to the said C. E. Malcomb the real estate described in the said mortgage sought to be foreclosed in this action, and said deed was made subject to the mortgage sought to be foreclosed in this action.

"(10) That on the 31st day of August, 1895, the said C. E. Malcomb and wife deeded the said above-described real estate included in said mortgage to the defendant A. Jacobitz; said conveyance was made subject to the mortgage sought to be foreclosed in this action.

"(11) That said defendant A. Jacobitz, on the 20th day of March, 1902, made, executed and delivered to said defendant C. O. F. Brown, cashier, a warranty deed for said lots. . . . The defendant C. O. F. Brown, at the time of the execution and delivery of said deed, was cashier of the said Farmers and Mechanics National Bank of Cadiz, Ohio; . . . said deed was given by said defendant A. Jacobitz to said defendant C. O. F. Brown, cashier, as security for the payment of an indebtedness due from said defendant A. Jacobitz to the said Farmers and Mechanics National Bank of Cadiz, Ohio, and is and was intended to be a mortgage on said property by said parties. Subsequently, on March 1, 1906, A. Jacobitz conveyed by quitclaim deed all his right, title and interest in said lots to the defendant C. O. F. Brown, cashier.

"(12) That the said Louisa L. Baker and Robert H. Baker, her husband, paid to the said John Buchanan

Brown v. Baxter.

the annual interest due upon said note and mortgage prior to the time they deeded the same to C. E. Malcomb.

"(13) That some person paid to the said John Buchanan all annual payments of interest that became due after the said Malcomb received the title to said land and prior to the death of John Buchanan, on March 4, 1895.

"(14) That subsequent to the death of the said John Buchanan, on March 4, 1895, and up to and including the year 1903, the said A. Jacobitz paid to the said Mary Jane Buchanan . . . the annual interest due upon said mortgage . . . each year.

"(15) Subsequent to the indorsement of the promissory note and mortgage to the plaintiff, E. Baxter, in March, 1905, by Mary Jane Buchanan, the question of the legal title of the said E. Baxter to the said promissory note having come up, for the purpose of perfecting the title of the said E. Baxter to the said promissory note and mortgage, on the 28th day of April, 1906, one Samuel Buchanan, a son and heir at law of the said John Buchanan, deceased, was by the probate court of Carroll county, in the state of Ohio, duly appointed and qualified as administrator of the estate of John Buchanan, deceased, and letters of administration, authorized by law, were duly issued to him as such administrator.

"(16) That on the 28th day of April, 1906, the said probate court of Carroll county, state of Ohio, made and entered of record the following order and judgment in the matter of the estate of said John Buchanan, deceased, to wit:

" 'IN PROBATE COURT.
" 'State of Ohio, Carroll County, ss.
" 'On this 28th day of April, A. D. 1906, it appearing upon the application of Samuel Buchanan, administrator of the estate of John Buchanan, deceased, that all of the debts of said estate have been paid and that there remains in his hands a certain note belonging to said estate, and that it is the desire of the persons interested in said estate that the same be distributed in kind to Mary Jane Buchanan, widow of said John Buchanan, deceased, and that she be permitted to retain all payments of principal and interest made to her on said note and indorsed thereon, commencing on March 10, 1895, and subsequent to that date, as a part of her interest in said estate, and it appearing that such distribution is with the consent and agreement of the heirs and widow of said John Buchanan, deceased, made in April, 1895, it is ordered that said administrator distribute the said note to said widow of said decedent, and permit her to retain all payments of interest and principal paid to her on March 10, 1895, and subsequent thereto, of which said note the following is a copy, with all credits and indorsements thereon, to wit: [Here follows copy.]'

"And thereupon said administrator filed his report

in the foregoing matter, in words and figures as follows, to wit:

" 'In Probate Court of the County of Carroll, State of Ohio:
" 'In the matter of the estate of John Buchanan, deceased.
" 'In pursuance of the order of said court, in relation to the distribution of the promissory note of Louisa L. Baker and Robert H. Baker to A. Jacobitz, for $700, dated March 10, 1890, and due March 10, 1893, and assigned by said A. Jacobitz to said John Buchanan, the undersigned administrator of said estate hereby reports that he has made due distribution of said note to said Mary Jane Buchanan, in accordance with the order of the court heretofore made, and I hereby ratify and approve all payments of both principal and interest made upon said note to said Mary Jane Buchanan, on March 10, 1895, and subsequent thereto and indorsed thereon.
SAMUEL BUCHANAN,
*Administrator of the estate of John Buchanan, deceased.*
" 'The above and foregoing report is hereby approved by the court, this 28th day of April, 1906.          FRED W. McCOY,
[SEAL.]          *Probate Judge and ex-officio Clerk of said Court.'*

" (17) On the 16th day of June, 1906, in the matter of the guardianship of Ira Lee Rutledge, a minor, which matter was pending in the probate court of the county of Carroll and state of Ohio, the probate court of the said county of Carroll, in the state of Ohio, made and entered of record the following order and judgment in said matter of the estate of Ira Lee Rutledge, a minor, who was a grandson and heir at law of the said John Buchanan, deceased, to wit:

" 'In the matter of the guardianship of Ira Lee Rutledge, a minor.
" 'Report of William Rutledge, late guardian, in relation to settlement and distribution of personal assets of estate of John Buchanan, deceased:
" 'On this 16th day of June, A. D. 1906, William Rutledge, late guardian of said Ira Lee Rutledge, being an heir at law of John Buchanan, deceased, late of said county and state, makes report that he proceeded in the settlement and distribution of the personal assets of the estate of John Buchanan, deceased, as such guardian, and that the assets of said estate were, by the widow and heirs at law of said decedent, mutually distributed among said heirs in April, 1895, and that in said distribution it was agreed that the widow, Mary Jane Buchanan, should have her distributive share of said estate. And it was further agreed that certain notes should be and were given to her as her distributive share of the personal estate of her deceased husband.
" 'In pursuance of said settlement said guardian represents that if the note described in said report, to wit, Marion, Kansas, March 10, 1890, and executed by Louisa L. Baker and Robert H. Baker, for the sum of $700, payable to A. Jacobitz or order, due March 10, 1893, with interest at the rate of twelve per cent. per annum after maturity, and assigned by A. Jacobitz to John Buchanan, and belonging to said estate, was distributed to Mary Jane Buchanan, he approved said distribution and the same was received by said Mary Jane Buchanan as part of her distributive share of said estate.
" 'Said report and acts of said guardian are hereby approved by the court.          FRED W. McCOY, *Probate Judge.'* "
[SEAL.]

The plaintiff, as a part of his evidence, offered the letters of administration issued by the probate court in Carroll county, Ohio, to Samuel Buchanan, the letters of guardianship issued to William Rutledge, and the proceedings had by the probate court with refer-

ence to the estate of John Buchanan, deceased, and the estate of Ira Lee Rutledge, a minor, and the depositions of the heirs of such estate, all of which were read in evidence over the objection of C. O. F. Brown, who was the only contesting defendant and is now plaintiff in error.

*King & Wheeler,* for plaintiff in error.

*L. F. Keller,* for defendants in error.

The opinion of the court was delivered by

GRAVES, J.: Three assignments of error have been made: (1) The plaintiff is not the owner of the note and mortgage or the real party in interest; (2) the cause of action is barred by the statute of limitations; (3) the court erred in the admission of evidence. It will be more convenient to consider these in irregular order.

There are two depositions of Samuel Buchanan. One of them was objected to on the ground that it was not signed by the witness. There is an unsigned stipulation attached to it which apparently was intended to authorize the stenographer to attach the witness's name to the deposition after it had been transcribed, and it was so signed. The preservation and protection of evidence taken in this way is of too much importance to permit inference and speculation as to the manner in which it was taken. Section 359 of the civil code (Gen. Stat. 1901, § 4807) contemplates that the witness shall subscribe the deposition in the presence of the officer before whom it is taken. The parties, however, may waive these provisions, but if they do the waiver should clearly appear. We think this objection should have been sustained, but in our view of the case the error was immaterial.

It is further urged that the court erred in admitting in evidence the proceedings of the probate court in relation to the estate of John Buchanan, deceased, and of the guardianship of Ira Lee Rutledge, referred to

in conclusions of fact Nos. 16 and 17, for the reason that they are not properly authenticated, either under the federal or state statutes. In what particular they are deficient is not stated. The United States statute upon this subject reads:

"The records and judicial proceedings of the courts of any state or territory, or of any such country, shall be proved or admitted in any other court within the United States, by the attestation of the clerk, and the seal of the court annexed, if there be a seal, together with a certificate of the judge, chief justice, or presiding magistrate, that the said attestation is in due form. And the said records and judicial proceedings, so authenticated, shall have such faith and credit given to them in every court within the United States as they have by law or usage in the courts of the state from which they are taken." (U. S. Comp. Stat. 1901, § 905.)

The authentication in question reads:

"The state of Ohio, Carroll County, ss, Probate Court.

"I, Fred W. McCoy, judge and ex-officio clerk of the probate court, within and for the county of Carroll and state of Ohio, do hereby certify that the foregoing is a true copy of the journal entry (journal 18, p. 39) as the same appears upon the records of said court, and I further certify that I have carefully compared the foregoing copy with the original record, and that the same is a full and correct transcript thereof; that I am sole custodian of the records of said probate court, and that this certificate is in the form of law.

"In witness whereof I have hereunto set my hand and affixed the seal of said probate court, at Carrollton, Ohio, this 16th day of June, A. D. 1906.
[SEAL.]                    FRED W. McCOY,
          *Probate Judge and ex-officio Clerk of said Court.*"

"State of Ohio, Carroll County, ss.  Probate Court.

"I, Fred W. McCoy, sole judge of the probate court, within and for said county and state, the same being a court of law and of record, do hereby certify that Fred W. McCoy, whose genuine signature is attached to the foregoing certificate, is, and was at the time of signing the same, *ex officio* clerk of said probate court, and, as such, full faith and credit are due his acts, and

that the above is in due form of law, and made by the proper officer.

"In witness whereof I have hereunto set my hand and affixed the seal of said probate court, at Carrollton, Ohio, this 16th day of June, A. D. 1906.

(SEAL.)     FRED W. McCOY, *Probate Judge.*"

The other certificate is substantially the same, except that the whole matter is embraced in one certificate. We think this sufficient. (*Case v. Huey, Adm'r,* 26 Kan. 553, 560; *Graham v. Troth,* 69 Kan. 861, 77 Pac. 92; 17 Cyc. 353; Abbott's Trial Ev., 2d ed., 669; 1 Bouv. Law Dic. p. 820; 2 Ell. Ev. 590.)

The proceedings show, however, that the application by the administrator for an order to make final distribution, the order of the court in pursuance of such application, the report that such distribution had been made, and the court's approval thereof, all occurred upon the same day. This probate court is in the state of Ohio. The provisions of the law of that state upon this subject do not appear in the record of this case, and we must therefore presume it to be the same as the law of this state. (*Railroad Co. v. Johnson,* 61 Kan. 417, 59 Pac. 1063; *Bank v. Nordstrom,* 70 Kan. 485, 78 Pac. 804.) Under the statute of this state a valid final settlement and order of distribution cannot be made without notice to the parties interested. (Gen. Stat. 1901, § 2957; *Music v. Beebe, Adm'r,* 17 Kan. 47.) We do not think the record of the probate court is, therefore, entitled to much weight in determining this controversy. The case should rest upon the other facts found by the court.

It is insisted that when a citizen of the state of Ohio dies the title to his personal property descends to his executor or administrator, and not to his heirs, and, therefore, the ownership of the note and mortgage involved in this suit did not pass to Mary Jane Buchanan or to the plaintiff, but they have at all times belonged to the estate of John Buchanan, deceased. Assuming, as we must in the absence of evidence to the contrary,

that the law of the state of Ohio upon this subject is the same as it is in this state, we do not concur in this view. Under sections 1, 18, 31 and 32 of the law relating to descents and distributions, being chapter 33 of the General Statutes 1901 (§§ 2503, 2520, 2532, 2533), the equitable title to the whole estate belonging to a decedent, real and personal, not exempt, descends directly to his heirs. The legal title to personal property passes to the administrator, if there be one, who holds it in trust for creditors, heirs or legatees. (*Fletcher v. Wormington,* 24 Kan. 259, 264.) When there are no debts administration is unnecessary, and the heirs may collect the estate and make distribution among themselves. (See 3 Redfield, Wills, 2d ed., 89.) In volume 11 of the American and English Encyclopædia of Law, at page 742, it is said:

"If there are no creditors the next of kin entitled to the estate may collect and make distribution among themselves without administration, but the court of probate still has jurisdiction to grant administration, though the estate owes no debts and there is only one distributee."

Also, in volume 18 of the Cyclopedia of Law and Procedure, at page 62, it is said:

"In a number of states it is held that administration is unnecessary where there are no debts of the estate or the debts have all been paid, the courts considering that when the only duty devolving on an administrator would be to make a distribution of the estate, and the heirs or distributees make or are able to make a satisfactory distribution or disposition thereof themselves, or there is only one heir, administration would be merely a useless ceremony involving unnecessary expense, and the same is true where no administration has been applied for and the claims of creditors, if any exist, are barred because they have not been presented to the probate court within the time limited for that purpose, or by the statute of limitations. But if any of the heirs or distributees demand an administration it must be had."

In the case of *Foote v. Foote,* 61 Mich. 181, 28 N. W. 90, the court said:

"The legal estate only in personal property vests in the administrators; the equitable estate therein is in the heirs, or other persons entitled to distributive portions thereof. The estate of the administrators therein is a trust for that purpose, and is created only for the purpose of laying hold of the estate and making such distribution. When there are no creditors, the heirs or legatees may collect, if they can, the estate together, and make such distribution among themselves as they may agree to and carry into effect, without the intervention of any administrators; and the law favors such arrangements. In such cases it is only where the heirs or legatees fail to make such collection and distribution that administration becomes necessary.

"When such arrangement and distribution have been made and executed, it will be binding, both in law and equity, as between the parties making it, whenever the rights of creditors do not intervene. And where there are no creditors, the heirs or legatees may divide up and distribute the personal property of the decedent, without converting it into money, in such manner as they see fit; and when such division has been executed, even though it is not such as the decedent has made by his will, or such as the law would make when there is no will, it will be binding upon all the parties to the agreement." (Page 189.)

In the case of *Walworth v. Abel,* 52 Pa. St. 370, it was said:

"No doubt the personal estate of a decedent vests in the administrator, but in trust for creditors and heirs or legatees. The mere legal estate passes to the administrator; the equitable descends upon the parties entitled to distribution. If there be no creditors the heirs have a complete equity in the property, and if they choose, instead of taking letters of administration, to distribute it by arrangement made and executed amongst themselves, where is the principle which forbids it?

"The parties to such an arrangement executed would be forever equitably estopped from disturbing it, as amongst themselves, upon the most familiar principles of justice. And why shall the arrangement be

broken up by a mere intermeddler? Family arrangements are favorites of the law, and when fairly made are never allowed to be disturbed by the parties, or any other for them." (Page 372.)

The following cases are to the same effect: *Needham v. Gillett*, 39 Mich. 574; *Waterhouse v. Churchill*, 30 Colo. 415, 70 Pac. 678; *McGhee et al. v. Alexander et al.*, 104 Ala. 116, 16 South. 148; *Cox v. Yeazel*, 49 Neb. 343, 68 N. W. 485.

In this case there were no debts, except a few of small amount, which were paid. The assets were accessible to the heirs of the intestate, who lived where they could easily confer with each other. The appointment of an administrator was unnecessary, and the expenses incident thereto might well have been avoided. The property belonged to the heirs exclusively, and it seems reasonable and just that they should have the right to divide it among themselves and own, use and dispose of it in severalty as any other property which they might own.

The only person who could question such a transaction would be a creditor who had been overlooked and not paid. The possibility of that contingency had passed, however, some years before this suit was commenced, by lapse of time, more than three years having passed since the last date on which an administrator might have been appointed. (*Bauserman v. Charlott*, 46 Kan. 480, 26 Pac. 1061; *Kulp v. Kulp*, 51 Kan. 341, 32 Pac. 1118, 21 L. R. A. 550; *Bank v. King*, 60 Kan. 733, 737, 57 Pac. 952.)

The widow and each of the children of John Buchanan, deceased, testified at the trial to the settlement and division of the estate among themselves and the grandchildren of the deceased, and that it was satisfactory to all parties. The great lapse of time since the estate was settled, during which all parties have acquiesced therein and retained the amount received thereby, is sufficient to estop them from hereafter objecting to the arrangement. The claim of the plaintiff

in error that the note and mortgage are barred by the statute of limitations is based upon the ground that Mary Jane Buchanan did not become the owner thereof by the action of the heirs of John Buchanan, deceased, and therefore the payment of interest to her did not prevent the running of the statute. The view we have taken of her rights in this respect, however, answers this objection, and the question need not be further considered.

This disposes of the assignments of error. No material error having been shown, the judgment is affirmed.

---

OPINION DENYING A PETITION FOR A REHEARING.
(94 Pac. 574.)

The opinion of the court was delivered by

GRAVES, J.: A petition for a rehearing has been filed in this case which criticizes the court for overlooking questions which the plaintiff in error deems important and controlling in the case. One of the chief questions discussed by the plaintiff in error was that the appointment of an administrator in this case was imperative because there were debts outstanding against the estate. It appears from the facts contained in the statement of the case, however, that the only debts were a few of very small amounts, and one for $1600, due to the widow for cash of hers loaned by the intestate, who took the notes therefor in his own name. This debt was immediately extinguished by giving to her notes in that amount from those belonging to the estate. To this adjustment every person who could object consented, and has ever since acquiesced therein.

This suit was commenced eleven years after the settlement by the heirs. The plaintiff in error, who objects to this adjustment, is a stranger to the estate and has no interest in its settlement except to protect himself from double payment of his debt. The danger

in this respect, of which he seems apprehensive, is that an administrator may yet be appointed who will ignore the adjustment of affairs made by the heirs and proceed to collect the assets and administer the estate the same as if the appointment had been made immediately after the death of the intestate, or that the minor heir, who could not consent, may repudiate the settlement and insist upon a different division of the estate.   This apprehension seems to be without foundation and purely fanciful.   There are no creditors who can obtain the appointment of an administrator; there are no scattered assets to be collected and preserved; there is no disagreement among the heirs; and therefore no necessity for an administrator exists.   If there are creditors, their claims have long been barred by the statute of limitations.   Where the parties immediately interested in an estate fail to have an administrator appointed within the time fixed by the statute, then any creditor may cause one to be appointed, and from the time when such an appointment could have been made the three-year statute of limitation begins to run against the creditors, whether an appointment is made or not. (*Bauserman v. Charlott,* 46 Kan. 480, 26 Pac. 1061.)

The heirs, having participated in this settlement, are estopped from denying its validity.   The minor heir was fourteen years of age when the settlement was made.   His guardian participated in the division of the assets, and received the share allotted to his ward. This suit was commenced four years after the minor heir had reached the age of majority, and he still retained the property received by him and was satisfied therewith.   The age of this minor is not shown in the findings of fact, but is given in the testimony of his uncle, who fixes it as here stated.

The legal status of the estate has been considered as of the time when this suit was commenced, rather than of the date when the estate was settled.   If the objections and arguments now presented by the plaintiff in

Betterment Co. v. Reeves.

error had been made at or near the time when the heirs divided the estate, the conditions which now exist might have been avoided; but after the lapse of eleven years, during which time the right of all interested parties to question the proceedings has become barred by limitation and estoppel, such objections do not seem sufficient to justify the disturbance of the property rights now dependent thereon. No right is injured by the present situation. The plaintiff in error can pay his note with safety. He has no cause to complain of what the heirs have done.

The petition for a rehearing is denied.