MIAMI COUNTY NAT. BANK OF PAOLA, KAN., v. BANCROFT.

STATE OF KANSAS ex rel. PARKER, Attorney General, v. SAME.

MIAMI COUNTY NAT. BANK OF PAOLA, KAN., v. ROBERTS.

STATE OF KANSAS ex rel. PARKER, Attorney General, v. SAME.

STATE OF KANSAS ex rel. PARKER, Attorney General, et al. v. BANCROFT.

Nos. 2255–2258 and 2264.

Circuit Court of Appeals, Tenth Circuit.

July 17, 1941.

J. O. Rankin, of Paola, Kan., for appellant Miami County Nat. Bank of Paola, Kan.

L. Perry Bishop, of Paola, Kan., and Louis R. Gates, of Kansas City, Kan. (Jay S. Parker, Atty. Gen., of Kansas, on the brief), for appellants State of Kansas, Jay S. Parker, as Attorney General, Louis R. Gates, and L. Perry Bishop.

Benjamin E. Seibert, of Urbana, Ohio, and Clyde A. Raleigh, of Hutchinson, Kan. (Tincher, Raleigh & Cushenbery, of Hutchinson, Kan., on the brief), for appellees.

Before BRATTON and HUXMAN, Circuit Judges, and KENNAMER, District Judge.

HUXMAN, Circuit Judge.

Anna Laura Colwell Bancroft[1] and Roxie Belle Roberts[2] filed their separate petitions in the District Court of the United States for the District of Kansas against the Miami County National Bank of Paola, Kansas, a corporation,[3] as Administrator of the estate of Henry C. Jones,[4] deceased, seeking a judgment of the court determining that they were heirs of the deceased and entitled to share in the distribution of the property of his estate. While no order

[1] Herein referred to as Bancroft.
[2] Herein referred to as Roberts.
[3] Herein referred to as Administrator.
[4] Herein referred to as Jones.

of consolidation was entered, the two cases were tried together.

Appeals were taken by the Administrator in No. 2255 and No. 2257 from the judgment of the court determining that Bancroft and Roberts were heirs and entitled to share in the distribution of the estate. Appeals were taken by the State of Kansas ex rel. Jay S. Parker, Attorney General, in No. 2256 and No. 2258 from an order of the District Court denying the Attorney General the right to intervene in No. 2255 and No. 2257. An appeal was taken by the State of Kansas ex rel. Jay S. Parker, Attorney General, in No. 2264, from the order of the trial court enjoining the administrator and the Attorney General from proceeding in the Probate Court of Miami County, Kansas, with an application to correct, by a nunc pro tunc order, an alleged omission from the records of the Probate Court in the Jones estate, which, it is asserted, has existed for more than three years. All of the appeals will be considered together in one opinion.

Appellants in No. 2255 and No. 2257 assert that the District Court was without jurisdiction of the subject matter of the actions because a federal court has no probate jurisdiction and that therefore its judgments are void. Henry C. Jones, a resident of Miami County, Kansas, died intestate on February 23, 1934. On March 7, 1934, the appellant The Miami County National Bank of Paola, Kansas, a corporation, was appointed administrator of his estate, and the estate has been in continuous probate since that time. The appointment of the administrator antedated the filing of the petitions in the District Court of the United States by either Bancroft or Roberts so that when they filed their actions in the federal court, probate court proceedings were then pending in the Probate Court of Miami County, Kansas.

Matters of purely probate character are not within the jurisdiction of the federal courts. Ellis et al. v. Davis, 109 U.S. 485, 3 S.Ct. 327, 27 L.Ed. 1006; Farrell v. O'Brien (O'Callaghan v. O'Brien), 199 U.S. 89, 25 S.Ct. 727, 50 L.Ed. 101; O'Connor et al. v. Slaker et al., 8 Cir., 22 F.2d 147. The question here, however, is not one of probate, but is to determine the ownership of property and the right to share in the distribution thereof. It has been held by an unbroken line of decisions that where diversity of citizenship and the requisite jurisdictional amount are present, federal courts have equity jurisdiction to determine whether litigants are heirs of a deceased and their share in his estate. In Waterman v. Canal-Louisiana Bank & Trust Co., 215 U.S. 33, 43, 30 S.Ct. 10, 12, 54 L.Ed. 80, the Supreme Court said: "This court has uniformly maintained the right of Federal courts of chancery to exercise original jurisdiction (the proper diversity of citizenship existing) in favor of creditors, legatees, and heirs, to establish their claims and have a proper execution of the trust as to them. In various forms these principles have been asserted in the following, among other, cases: Suydam v. Broadnax, 14 Pet. 67, 10 L.Ed. 357; Hyde et al. v. Stone, 20 How. 170, 175, 15 L.Ed. 874, 875; Green's [Adm'r'x] v. Creighton [et al], 23 How. 90, 16 L.Ed. 419; Payne v. Hook, 7 Wall. 425, 19 L.Ed. 260; Lawrence v. Nelson, 143 U.S. 215, 12 S.Ct. 440, 36 L.Ed. 130; Hayes v. Pratt, 147 U.S. 557, 570, 13 S.Ct. 503, 37 L.Ed. 279, 284; Byers v. McAuley, 149 U.S. 608, 13 S.Ct. 906, 37 L.Ed. 867; Ingersoll v. Coram, 211 U.S. 335, 29 S.Ct. 92, 53 L.Ed. 208."

The jurisdiction of federal courts in such matters is derived from the federal constitution and statutes and may not be restricted nor abridged by a state establishing probate courts and giving them exclusive jurisdiction over the settlement of estates of decedents. Payne v. Hook, 7 Wall. 425, 19 L.Ed. 260; Waterman v. Canal-Louisiana Bank & Trust Co., supra. Here no attempt was made to interfere with the probate court in the administration of the estate. Bancroft and Roberts only sought to establish in the federal court their heirship and interest in the property of the decedent, and this they had a right to do.

In No. 2255, the additional point is raised that Bancroft was estopped from maintaining her action in the federal court because she had invoked the jurisdiction of the probate court. On October 1, 1937, prior to the time she began her action in the federal court, she filed an affidavit by her attorney in the probate court. The affidavit was filed to establish her claim as an heir of the deceased to a share in the estate. It is asserted that by this act she invoked the jurisdiction of the probate court and that the probate court could not thereafter be ousted of that jurisdiction by the subsequent action in the federal court. It is not a question of ousting the probate

924

court of jurisdiction. The precise question is whether, having invoked the jurisdiction of the probate court, she could file an action in another court of competent jurisdiction, there seeking a determination of the same issue.

■ It has been generally held that where an action is in personam, the pendency of such an action in one court does not preclude the filing of the same action in another court of competent jurisdiction. Stanton et al. v. Embrey, Administrator, 93 U.S. 548, 554, 23. L.Ed. 983; Bryar v. Campbell, 177 U.S. 649, 20 S.Ct. 794, 44 L.Ed. 926; Hunt v. New York Cotton Exchange, 205 U.S. 322, 339, 27 S.Ct. 529, 51 L.Ed. 821; Kline v. Burke Const. Co., 260 U.S. 226, 43 S.Ct. 79, 67 .L.Ed. 226, 24 A.L.R. 1077; Equitable Life Assur. Soc. of United States v. Wert, 8 Cir., 102 F.2d 10; Byrd-Frost, Inc. v. Elder, 5 Cir., 93 F.2d 30, 115 A.L.R. 342.

■ The precise question seems to have been considered in Farmers' Bank v. Wright, C.C.Iowa, 158 F. 841. There a creditor filed a claim in a state court administering the estate of a decedent, and subsequent thereto filed an action in the federal court against the administrator on the same claim. It was held that the pendency of the claim in the state court administering the estate did not preclude the creditor from proceeding with an action in the federal court.

To establish their relationship to decedent, Bancroft and Roberts offered in evidence Exhibits 17 and 18. Objections to their receipt were overruled. Exceptions were taken to the ruling of the court and error is predicated on the admission of these two exhibits. Exhibit 17 was entitled "Genealogy of David Jones" and was compiled by Ellen M. Beals. Exhibit 18, compiled by Waldo Lincoln, was entitled "History of the Lincoln Family." These two exhibits tended to establish the family history, relationship and pedigrees through which Bancroft and Roberts sought to trace their relationship to decedent Jones.

■ Hearsay evidence in the form of family trees or pedigrees is admissible to establish family relationship, subject to certain limitations and restrictions. To be admissible, such a declaration must have been made by one who was a member of the family and is no longer alive. The relationship of the declarant to the family must be established by competent evidence independent of the declaration itself. American Jurisprudence, Vol. 20, p. 409, sec. 468. In each instance, the declarant of Exhibits 17 and 18 was dead. It is asserted by appellants that there is no evidence in the record outside of the instruments themselves tending to establish that Ellen M. Beals was a member of the family of Henry C. Jones, or that Waldo Lincoln was in any way related to Henry C. Jones. Appellee Bancroft testified that Ellen M. Beals was a member of the Jones family; that her knowledge as to the relationship of the family was derived not only from Exhibit 17 but also from what she heard in the family from members of the family, and from conversations with her mother. Daniel Waldo Lincoln testified that he was a son of Waldo Lincoln, who prepared the genealogy of the Lincoln family; that he had no personal knowledge of anything that went back of his birth, but that he knew from family conversations "almost all, if not all, of my own descent"; that he derived a great deal of his knowledge of the family from declarations of his father and from family history, repute and tradition.

■ Only slight proof of the relationship of the declarant to the family is required, since the relationship of the declarant with the family might be as difficult to prove as the fact in controversy. American Jurisprudence, Vol. 20, p. 409, sec. 468; Fulkerson v. Holmes, 117 U.S. 389, 397, 6 S.Ct. 780, 29 L.Ed. 915. The exhibits were properly received. In addition to Exhibits 17 and 18, appellees Bancroft and Roberts introduced a great deal of testimony bearing upon their relationship to decedent Jones. In part, this testimony consisted of copies of wills, letters testamentary, reports of fiduciaries of estates, correspondence in the form of letters, and various memoranda and books. An examination of all the evidence leads us to conclude that the conclusion and judgment of the court establishing the heirship of Bancroft and Roberts and their right to share in the estate of decedent Jones is supported by substantial proof and the same is hereby approved.

In Case 2257, an additional question is presented. It is asserted that appellee Roberts may not inherit because she is not within the degree of blood relationship required for inheritance by the laws of Kansas. Ch. 180 of the 1939 Session Laws of Kansas, the same being Section 59-509,

1939 Supplement to the General Statutes of Kansas for 1935, so far as material, provides that: "None of such property shall pass except by lineal descent to a person further removed from the decedent than the sixth degree, as so computed."

This act became effective July 1, 1939, more than five years after the decedent Jones died. In Brown v. Baxter, 77 Kan. 97, 94 P. 155, the Supreme Court of Kansas held that the equitable title to personal property of an intestate descends at once to the heirs, subject only to the debts of the decedent. While they do not so specifically state, the inference we draw from appellants' brief is that they hold that the effect of Section 59-509, supra, is to divest appellee Roberts of that which had been her property for more than five years prior to the passage of the act. They cite Section 59-2602 of the act, which provides: "Effective date. The rules of procedure herein prescribed shall govern all probate proceedings brought after they take effect and also all further procedure in probate proceedings then pending, except to the extent that in the opinion of the court their application in a particular proceeding when they take effect would not be feasible or would work injustice, in which event the former procedure applies. This act shall take effect and be in force on and after July 1, 1939, and after its publication in the statute book."

Ch. 180 of the 1939 Laws of Kansas established a new probate code for the state. It repealed all existing laws relating to decedents' estates and their administration in the probate court. It not only fixes substantive rights of parties in decedents' estates, but it also adopts a system of rules and procedure by which estates are thereafter to be administered in the probate court. As always in such cases, a question arises in those estates which are in the process of administration when the change becomes effective. Are they to be administered according to the old rules or the new rules? It seems to us that the clear intent of Section 59-2602 is that the new rules of procedure are to apply to all estates begun after the effective date of the new code, and that in pending cases the new rules of procedure should apply thereafter insofar as it was found feasible and practical by the court administering the estate. We can read nothing into this section which would indicate a legislative intent to depart from the principle established in the Brown case, supra.

The last part of Section 59-509 provides that: "In all cases of intestate succession the right of a living person to have the property, or a share of it, passed to him, shall be determined as here provided, but the property shall pass immediately from the decedent to the person entitled to receive it." This legislative pronouncement reaffirms the decision in Brown v. Baxter, supra.

In No. 2256 and No. 2258, the Attorney General for the state of Kansas has appealed from the decision of the trial court denying him the right to intervene in both the Bancroft and the Roberts case. He claims such right under Section 59-905 of the 1939 Supplement to the General Statutes of Kansas for 1935. Sections 59-901 to 59-905, inclusive, deal with the administration of estates of intestates without heirs. Section 59-905 in substance provides that the state shall be a party to all such proceedings; that the County Attorney shall represent the state; that he shall diligently protect and conserve the estate for the benefit of the state school fund; that the Attorney General may appear and assist the County Attorney.

It may be that the Attorney General had the absolute right to intervene and appear in the Probate Court, although apparently Jones did not die without leaving heirs. From the record it appears that the probate court made a partial distribution of funds to persons who inherited through the maternal ancestor. This distribution has not been challenged by anyone. The right of the Attorney General to intervene in these proceedings does not, however, proceed from the state statute, but must be sought in the federal law.

Rule 24 of the New Federal Rules, 28 U.S.C.A. following section 723c, relates to intervention. It provides for both permissive intervention and for intervention as a matter of right. In each instance timely application must be made. Subsection (c) of the rule provides that one desiring to intervene shall serve a notice upon all parties affected thereby. The motion for intervention must state the grounds therefor and shall be accompanied by a pleading setting forth the claims or defense upon which intervention is sought. No part of this rule was complied with by the Attorney General. The Bancroft action was

filed February 27, 1937. The Roberts action was filed November 29, 1937. Motions to dismiss and answers were filed at different times by the administrator. A special master was appointed March 30, 1940. Hearings were held and a great amount of evidence was received. On May 18, 1940, the master filed his report containing his findings of fact and conclusions of law. On June 5, 1940, the administrator filed objections to the confirmation of the master's report. During all this time the Attorney General sat by. Then, on June 21, 1940, when the taking of testimony had been concluded and the master's report, containing his findings of fact and conclusions of law, had been filed, he sought to intervene. But even then he did not comply with the rule. No pleading was filed with the application, as required by Rule 24(c). The purpose of the rule requiring the motion to state the reasons therefor and accompanying the motion with a pleading setting forth the claim or defense is to enable the court to determine whether the applicant has the right to intervene, and, if not, whether permissive intervention should be granted.

Furthermore, an examination of the application for intervention that was filed fails to reveal any good reason for permitting intervention after the filing of the master's report. The application does not definitely state that the state is entitled to the property, nor that the claims of Bancroft or Roberts are without merit. The main reason for intervention, as we glean it from the statements in the application, is that about May 28, 1940, the defendant, The Miami County National Bank of Paola, Kansas, administrator of the estate of decedent, requested the Attorney General to make the investigation and make the defense against the claims that were then being asserted. We conclude that the court exercised a sound discretion in its ruling on the application to intervene and that there was no error in its ruling.

The appeal in No. 2264 is by the Attorney General from an injunctive order of the District Court. His brief states that the appeal is taken on behalf of all the appellants.

As stated before, on October 1, 1937, prior to the institution of her suit in the federal court, Benjamin E. Seibert, as attorney for appellee Bancroft, filed her affidavit in the Probate Court of Miami County, Kansas, in which she claimed to be an heir of Jones, deceased, and entitled to a share of the estate. The records of the probate court fail to show what, if any, disposition was made of the matter presented in the affidavit. On September 9, 1940, the Attorney General, by Louis R. Gates and Perry Bishop, filed a petition in the probate court for an order nunc pro tunc to record the action taken by the probate court on this affidavit. The petition states that when the attorney for Bancroft filed her affidavit he made an application and request in open court for a decree determining that she was an heir and for the portion of the estate to which she was entitled; that he made a further request in open court for an order of partial distribution; that the probate judge told the attorney that he could not pass upon the matter unless and until the matter was set for hearing upon proper notice; that the court refused to grant the relief without a hearing, and in open court made an order to that effect.

Appellee Bancroft thereupon filed an application in the United States District Court for a restraining order and for a permanent injunction enjoining the Attorney General and his assistants and the Administrator from proceeding with any hearing on the petition for a nunc pro tunc order in the probate court. The court granted a restraining order and upon hearing entered an injunction restraining the Attorney General, his assistants and the administrator from proceeding in the probate court with a hearing of the application for the nunc pro tunc order.

In the petition for the injunction, appellee Bancroft stated that the proceedings in the probate court were a sham and conceived to deprive her of benefits of her judgment in the federal court. She stated that the petition prayed for a nunc pro tunc order denying her any interest in the Jones estate. The petition does not ask for the entry of any order denying her any interest in the estate. With the application for the order, the Attorney General filed the affidavit of C. E. Rossman, who was the probate judge at the time the alleged application was made for determination of heirship and partial distribution. The substance of his affidavit is that he recalled the appearance of the attorney for appellee Bancroft in his court and his request for a determination that she be decreed an heir and for a partial distribution; that he stated that he could not act

on the application until the claim of heirship was set for hearing upon proper notice; that no request for a hearing was made and that no determination of heirship was made by him; and that the claim remained undetermined throughout his term of office. The affidavit of F. T. Barkis, the succeeding and present probate judge, was filed. It states that the claim still remains pending and undisposed of on its merits in the court.

 The effect of the nunc pro tunc order, if entered, would simply be to show that a claim of heirship was asserted in the probate court by appellee Bancroft; that it was never acted upon; that no judgment of any kind had ever been entered; that it remained undisposed of in the probate court. We fail to see how such a record could affect the rights which have accrued to appellee Bancroft under her judgment in the federal court.

The cases cited by appellee to sustain the injunction are not in point. The nunc pro tunc proceedings in no wise attempted to interfere with the judgment or the proceedings in the federal court. All courts have inherent jurisdiction over their own proceedings. Power to enter judgments, decrees and orders nunc pro tunc is inherent in courts, both in law and equity, and is not dependent for existence upon a statute. Victory Life Ins. Co. v. Freeman, 145 Kan. 296, 65 P.2d 559; Cazzell v. Cazzell, 133 Kan. 766, 3 P.2d 479. It has been expressly held that a probate court in Kansas has power to correct its records by a nunc pro tunc order, Faler v. Culver, 94 Kan. 123, 146 P. 333, and that such correction may be made upon the testimony of a former judge. Faler v. Culver, supra; Plummer v. Ash, 90 Kan. 40, 133 P. 157; Graden v. Mais, 83 Kan. 481, 112 P. 107.

Furthermore, the judgment of the court in this matter may not be sustained because expressly prohibited by 28 U.S.C. A. § 379, which provides that: "The writ of injunction shall not be granted by any court of the United States to stay proceedings in any court of a State, except in cases where such injunction may be authorized by any law relating to proceedings in bankruptcy." The petition for a nunc pro tunc order was a proceeding in the probate court and interference therewith by a federal court is prohibited by this statute.

The judgment in Number 2255, Miami County National Bank of Paola, Kansas, a corporation, as Administrator, v. Anna Laura Colwell Bancroft, and in Number 2257, Miami County National Bank of Paola, Kansas, a Corporation, as Administrator, v. Roxie Belle Roberts, is affirmed.

The order in Number 2256, State of Kansas, ex rel. Jay S. Parker, Attorney General, v. Anna Laura Colwell Bancroft, and in Number 2258, State of Kansas, ex rel. Jay S. Parker, Attorney General, v. Roxie Belle Roberts, denying the right of the Attorney General to intervene, is affirmed.

The order in Number 2264, State of Kansas, ex rel. Jay S. Parker, Attorney General, et al. v. Anna Laura Colwell Bancroft, enjoining the parties therein from proceeding in the probate court of Miami County, Kansas, with their application for a nunc pro tunc order, is reversed and the case is remanded, with directions to dismiss the application for an injunction.