No. 36,595

In re Estate of Clifton H. Moore, deceased (CLIFTON M. WARNER, *Appellant*, v. W. C. GOULD, Guardian *ad litem* for John Hyatt et al., F. M. LUTHER, JR., Administrator, and MILDRED MEYER, *Appellees*).

(170 P. 2d 838)

No. 36,605

In re Estate of Clifton H. Moore, deceased (CLIFTON M. WARNER et al., *Appellees*, v. JOHN HYATT et al., *Appellants*).

Opinion filed July 6, 1946.

*W. C. Gould*, of Dodge City, argued the causes for appellants John Hyatt et al.

*A. D. Weiskirch*, of Wichita, argued the causes, and *George B. Collins* and *C. L. Williams*, both of Wichita, were on the briefs for appellee Clifton M. Warner.

*Austin M. Cowan*, of Wichita, argued the causes, and *W. A. Kahrs* and *Robert H. Nelson*, both of Wichita, were on the briefs for appellee Mildred Meyer.

The opinion of the court was delivered by

Smith, J.: These two appeals arise from a proceeding begun by the trustee of the estate of a man who died while a resident of Illinois for the admission of his will to probate in Gray county, Kansas, and for issuance of letters of administration to the trustee on account of real estate belonging to the estate located in Kansas. A woman who claimed to be a devisee under the will also filed a petition in which she asked full administration of the estate in Kansas and for an accounting.

The contest in the probate and district courts occurred between this trustee and a guardian *ad litem* for minors and for a person in the armed service, who were devisees under the will and whose interests were about the same as those of the trustee, on the one hand, and the woman who claimed to be a devisee under the will and interested in the estate, on the other.

The will was admitted to probate, a full administration was ordered and an administrator who was a resident of the county appointed. Subsequently the trustee and the guardian *ad litem* filed motions asking that the order appointing the administrator, admitting the will to probate, and for full administration and an accounting, be set aside. The probate court denied these motions and on appeal the district court sustained the probate court. The trustee and the guardian *ad litem* have appealed.

There is not very much controversy about the facts.

On May 23, 1945, a verified petition was filed in the probate court of Gray county alleging that one Clifton H. Moore had died in Illinois on April 29, 1901. The names of heirs, devisees and legatees were then stated. The petition further stated the general nature of the property owned by the estate of decedent and that letters of administration were prayed for Clifton M. Warner, trustee and surviving executor under the last will and testament of Clifton H. Moore, by virtue of his appointment by the county court of DeWitt county, state of Illinois, at its May term in 1925. The petition then referred to the last will of Moore, which was attached to the petition, and stated that by reason of the decedent having died leaving real property within the state of Kansas, it should be admitted to probate here. The prayer was that the will be admitted to probate and for the appointment of Warner as trustee and executor. The will devised considerable property and created a trust in favor of chil-

dren, grandchildren and great grandchildren of the testator. It provided that the executors of the will should become trustees and administer the trust for the benefit of these devisees after the estate was finally wound up. Exhibit B described 12,380 acres of farm land, a part of the estate all in Gray county, Kansas. The petition was set for hearing on the 22d of June, 1945. On that date one Mildred Meyer filed a verified application in which she said that she was the daughter of Vesper M. Warner, one of the devisees and legatees under the will of Moore and entitled to a portion of the estate of decedent; that she had an interest in the estate and was one of the beneficiaries under the will. She asked the court to require a full administration of the estate within the state of Kansas and that a full accounting be had in Kansas of the property since the death of Moore. On June 22, 1945, the trustee informed the court that among the heirs, devisees and legatees of the decedent and interested in the litigation were three minors, naming them, and one John Warner, III, who was in the military service at that time. He stated these minors claimed an interest in the property and it was necessary that a guardian *ad litem* be appointed to preserve and protect their interests and that an attorney be appointed under the Soldiers and Sailors Civil Relief Act to protect the interests of John Warner, III. The court proceeded to appoint a member of the bar of Ford county as guardian *ad litem* for them. He filed answers to the petition of the trustee in which he said he neither admitted nor denied the allegations of the petition but prayed that the petitioner be put on strict proof of his petition. On the same date the probate court ordered the will admitted to probate and ordered a full administration of the estate within the state of Kansas and that the matter of an administrator therefor be continued to July 6, 1945.

On July 6, the trustee filed a verified application to set aside the judgment rendered on the 22d day of June. He stated that none of his attorneys knew at the time they filed the petition to probate the will and for the appointment of an administrator that the will of Moore had already been admitted to probate and record in the probate court of Gray county, between November, 1905, and April, 1906, and he further alleged that the property of Moore, deceased, situated in the state of Kansas, consisted of real estate; that there was no personal property to be assembled or debts to be paid in the estate and that no further administration was necessary. The prayer of this petition was that all judgments and orders made

therein on the 22d day of June, 1945, be set aside and he be permitted to dismiss the petition at the cost of petitioner. On the same date the guardian *ad litem* filed an amended answer in which he stated that he had no previous knowledge or information of any claim of Mildred Meyer and no opportunity to investigate its merits. He stated that he had no information that the will of Moore had already been admitted to probate. He alleged that the will had been admitted to probate between November, 1905, and April, 1906. He stated that no further probate of the will was necessary or required and would serve only to dissipate the property of the minors. He, too, prayed that the order for administration be set aside and that the court find no administration in said estate was necessary.

The court made an order reciting the filing of the foregoing pleadings and in which he recited that Mildred Meyer objected to the granting of the applications and prayers of the amended answers for the reason that the proceedings referred to as the first will were incomplete; that the purported will was not properly authenticated, was without legal force or effect and was not admitted to probate in accordance with the statutes of Kansas, and for the further reason that the purported trustee was never authorized or appointed by any court in Kansas and had no authority to act in Kansas without proper proceedings. The order recited that the attorneys for Mildred Meyer offered testimony of the probate judge showing that after a search of the records she had been unable to find any file or record with reference to the purported will. The court denied the prayer of the amended answers, and found that a full administration should be had in this state and appointed an administrator. The trustee and the guardian *ad litem* appealed to the district court.

In the district court, Book 1 of Wills of the official records of the probate court of Gray county was offered in evidence and an affidavit of the trustee. It showed a verbatim copy of the will filed some time between November, 1905, and April, 1906. It was stipulated that Mildred Meyer was forty-three years old. There was no official court reporter present at that time and consequently no official record of the proceedings was had. The journal entry after reciting what had been done in probate court recited that the trustee had demurred to the evidence introduced by Mildred Meyer on the ground that she did not have any right to be heard. This demurrer was overruled and the judgments and orders of the probate court were sustained. The will was ordered admitted to probate and a

full administration of the estate in Gray county was ordered. It should be stated also that on December 11, 1945, the trustee demurred to the application of Mildred Meyer to require a full administration of the estate and for a full accounting of all properties from the death of Moore, on the ground that she did not have any right to be heard. This demurrer was overruled. The guardian *ad litem* and the trustee have both appealed.

The record is not as full as it might be. From it, however, we glean that the executor in Illinois had administered the 12,380 acres of Gray county land since 1925, at which time the estate in Illinois was finally wound up, and under the terms of the will the executor of the estate became trustee. Sometime in 1944 there was some oil and gas activity around Gray county and the trustee sought to lease the real estate in question for oil and gas. Some one, probably an attorney for an oil company, raised the question about the right of the trustee to transfer an interest in real estate since up to that time apparently no proceedings had been had in Kansas. The filing by the trustee of the petition to probate the will and for letters of administration followed. The filing by Mildred Meyer of her petition was not expected. At first glance it might appear that Mildred and the trustee asked for the same relief. Such is not the case, however. The trustee asked that he be named administrator even though he was a resident of Illinois, and that the will be admitted to probate. Mildred asked the court for a full administration of the estate in Kansas and for a full accounting. The guardian *ad litem* did not ask for relief except that the petitioner be put on strict proof. The relief finally given by the probate court was that asked by Mildred. The record is silent as to what evidence was introduced by Mildred at the hearing on the original petition, and on her allegation that she was the daughter of Vesper M. Warner, who was one of the devisees under the will and entitled to a portion of the estate of Clifton H. Moore.

Apparently between the dates June 22 and July 6, 1945, a search of the records in the office of the probate judge of Gray county was conducted because in the pleadings filed by the trustee and the guardian *ad litem* on the latter date a reference was made to a copy of the will of Clifton H. Moore being found amongst the records of that office. Indeed, the testimony of the judge later was that the will was copied verbatim in the book of wills. Apparently when this copy was discovered counsel for the trustee decided

that no probate proceedings were necessary and asked that the order of the probate court of June 22 admitting the will to probate, appointing an administrator, ordering a full administration, and an accounting, be set aside, and the petition be dismissed. In this he was joined by the guardian *ad litem*. From then on the contest became one in which the trustee and the guardian *ad litem* sought to set aside the order of June 22, 1945, and Mildred Meyer sought to keep it in effect and to prevent the proceedings from being dismissed.

A vigorous argument is made by all three parties as to the effect to be given the copy of the will found amongst the records. The executor and the guardian *ad litem* argue this appeal as though finding this copy, even though it was not authenticated, compels a conclusion that the will was probated on that date and hence no further probate proceedings were necessary. Mildred, on the other hand, points out that the copy was not authenticated as the statute in force at the time required and hence was of no force or effect whatever. The trustee and guardian *ad litem* argue that if the early probate of the will was good then the claim of Mildred was barred by laches because she had notice of the will when it was filed in 1902 or 1903, and hence waited over forty years before taking any action. On account of the conclusion we have reached it will not be necessary for us to decide that interesting question.

The appellants assign as one specification of error that the trial court erred in ordering the administration and the appointment of an administrator. The basis of this argument is that there was no necessity for the appointment of an administrator in Kansas, regardless of the holding as to the will having been recorded earlier.

Our statutes with reference to the probate of foreign wills is G. S. 1945 Supp. 59-801 and 59-802. These sections are as follows:

"Authenticated copies of wills, proved outside of this state according to the laws in force in the place where proved, relative to any property in this state, may be admitted to probate and record in the probate court of any county in this state where any part of such property may be situated; and such authenticated copies so admitted and recorded shall have the same validity as wills proved in this state in conformity with the laws thereof. Upon such admission to probate the court shall determine whether administration in this state is necessary.

"The estate of nonresident decedents, if administration thereof in this state is necessary, shall be administered in the same manner as the estate of a resident decedent. Upon the payment of the expenses of administration, of the debts and other items here proved and of the inheritance taxes, the residue

of the personal property, or of the proceeds from the sale of real estate, shall be transmitted to the domiciliary executor or administrator, to be disposed of by him; or the court may direct it to be distributed according to the terms of the will applicable thereto, or if the terms of the will are not applicable thereto, or if there is no will, it shall be distributed according to the law of the decedent's residence if personal, and according to the laws of Kansas, if real estate. The real estate not sold in the course of administration shall be assigned according to the terms of the will applicable thereto, or if the terms of the will are not applicable thereto, or if there is no will, it shall pass according to the laws of this state."

It will be noted that there is but little question but that it was proper for the probate court to admit this will to probate when it was offered and a proper application made. It will be further noted that once the will is admitted to probate then it is the duty of the probate court to determine whether administration in this state is necessary. This leads us to a consideration of the question of when or under what circumstances is the administration of an estate necessary. We considered that question in *Richards v. Tiernan*, 150 Kan. 116, 91 P. 2d 22. That was an action begun in 1938 by an administrator appointed in the estate of a decedent who died in 1906. A question was raised as to whether this was the sort of an action the administrator could bring. In holding that it was not, we said:

"An administrator takes title to the property of a decedent as a trustee and only for the purpose of administering the estate. In the process of administration he represents two classes of persons, creditors and heirs. Creditors of the estate, if any, slept upon their rights, their claims were barred and as to them no administration was required when plaintiff was appointed over twenty-one years after the death of Laura A. Tiernan. The rights of the heirs to the stock were at that time no longer limited or restricted by claims of creditors. Their original limited or qualified ownership had then become unqualified and complete. (*Brown v. Baxter,* 77 Kan. 97, 94 Pac 155; *Glathart v. Madden,* supra.) They were the owners of the stock. What occasion was there in 1927 for administering on the estate of the decedent? Obviously none. By the year 1927 the rights of creditors, if any ever existed, had vanished. Where there are no creditors administration has no office to perform. (*Brown v. Baxter,* supra; *Glathart v. Madden,* supra; *Riffe v. Walton,* 105 Kan. 227, 231, 182 Pac. 640; *Schmidt v. Loan & Trust Co.,* 112 Kan. 535, 211 Pac. 630.) There are some exceptions, such as compulsory administration for succession tax purposes, but none of them is involved in the instant case." (p. 119.)

To the same general effect is our holding in *Schmidt v. Loan & Trust Co.,* 112 Kan. 535, 211 Pac. 630. There a deed for real estate had been tendered and the prospective purchaser had refused to

accept title because there had been no administration of the estate of a deceased former owner. We said:

"No question was raised as to the sufficiency of the affidavits to prove that Nancy Mincer had no debts or other business affairs to justify or require an administration of her estate. Therefore administration was unnecessary and would have served no purpose. (*Brown v. Baxter,* 77 Kan. 97, syl. ¶ 2, 94 Pac. 574.) Moreover, administration of her personal estate would not affect her real property unless some showing were made that it was or might be required to pay debts of the decedent. An administrator cannot meddle with the real estate of a decedent under any other circumstances. (*Head v. Sutton,* 31 Kan. 616, 3 Pac. 280); it passes at once to the heirs at law; and in this case the 80 acres in controversy descended directly to Joseph V. Richardson by operation of law, regardless of the want of any administration of Nancy Mincer's estate." (p. 537.)

See, also, *Brown v. Baxter,* 77 Kan. 97, 94 Pac. 574. There we said:

"In this case there were no debts, except a few of small amount, which were paid. The assets were accessible to the heirs of the intestate, who lived where they could easily confer with each other. The appointment of an administrator was unnecessary, and the expenses incident thereto might well have been avoided. The property belonged to the heirs, exclusively, and it seems reasonable and just that they should have the right to divide it among themselves and own, use and dispose of it in severalty as any other property which they might own.

"The only person who could question such a transaction would be a creditor who had been overlooked and not paid. The possibility of that contingency had passed, however, some years before this suit was commenced, by lapse of time, more than three years having passed since the last date on which an administrator might have been appointed. (*Bauserman v. Charlott,* 46 Kan. 480, 26 Pac. 1061; *Kulp v. Kulp,* 51 Kan. 341, 32 Pac. 1118, 21 L. R. A. 550. *Bank v. King,* 60 Kan. 733, 737, 57 Pac. 952.") (p. 108.)

In this case the testator died in 1901 and probate proceedings were begun in Illinois soon after. The time within which the creditors might file claims has long since passed. There is no allegation whatever in the pleadings filed by appellee that administration is necessary on account of some special situation, such as collection of taxes. There is no evidence in the record from which such a situation might be deduced. Appellee argues that there are inheritance taxes to be collected in this state, that they can only be collected through the appointment of an administrator. Hence administration of the estate is necessary. There is no allegation in the pleadings filed by Mildred to indicate that such was the reason for her petition. The statute provides for the appointment of an ad-

ministrator of an estate for the collection of taxes on application of the proper state or county official. See G. S. 1945 Supp., 79-1521. This is not such a case.

Mildred Meyer states in her petition that she is the daughter of Vesper Warner who was one of the legatees under the will and entitled to a share in the estate. The codicil refers to the death of testator's daughter and to the fact that she left surviving her three sons and two daughters. The codicil also refers to a situation where one of these grandchildren should die leaving children. One of counsel informs us in his statement of fact that Vesper Warner was one of these three sons. There is an innuendo in the various statements and in the oral argument that Mildred was not recognized as the daughter of Vesper by the trustees of the estate. There is no allegation to that effect in the pleadings, however. At any rate, administration proceedings in the probate court of Gray county, Kansas, as to the land located there, forty-five years after the death of the testator, is not the proper tribunal and not the proper time to have that question raised.

It follows that the judgment of the district court is reversed with directions to sustain the trustee's demurrer to Mildred's evidence and enter judgment denying administration of the estate.