No. 36,595

In re Estate of Clifton H. Moore, Deceased. (CLIFTON M. WARNER, *Appellant*, v. W. C. GOULD, Guardian *ad litem* for JOHN HYATT et al., F. M. LUTHER, JR., Administrator, and MILDRED MEYER, *Appellees*.)

No. 36,605

In re Estate of Clifton H. Moore, Deceased. (CLIFTON M. WARNER et al., *Appellees*, v. JOHN HYATT et al., *Appellants*.)

(181 P. 2d 299)

KARL MILLER, judge. Opinion on rehearing filed June 7, 1947. (For original opinion see 161 Kan. 603, 170 P. 2d 838.)

*W. C. Gould,* of Dodge City, argued the causes for appellants John Hyatt et al.

*George B. Collins,* of Wichita, argued the causes, and *A. D. Weiskirch* and *C. L. Williams,* both of Wichita, were with him on the briefs for appellee Clifton M. Warner.

*Austin M. Cowan,* of Wichita, argued the causes, and *W. A. Kahrs* and *Robert H. Nelson,* both of Wichita, were with him on the briefs for appellee Mildred Meyer.

The opinion of the court was delivered by

SMITH, J.: This is an opinion on rehearing. For original opinion of reversal see *In re Estate of Moore,* 161 Kan. 603, 170 P. 2d 838.

The opinion was filed July 6, 1946. In due time a petition for rehearing was filed by appellee Mildred Meyer. In this petition appellee stated that she had no quarrel with the decision insofar as it decided whether full administration should be granted, but did object to a statement in the opinion which was set out in the motion. That statement appears at the close of the opinion on page 611 and is as follows:

"There is an innuendo in the various statements and in the oral argument that Mildred was not recognized as the daughter of Vesper by the trustees of the estate. There is no allegation to that effect in the pleadings, however. At any rate, administration proceedings in the probate court of Gray county, Kansas, as to the land located there, forty-five years after the death of the testator, is not the proper tribunal and not the proper time to have that question raised."

For reasons deemed adequate to the court a general rehearing was allowed and the cause was set for January 20, 1947. When the cause came on to be heard it appeared that counsel had not been advised upon just what points we desired further argument. Accordingly, the cause was not submitted on that date but was taken out of the January sitting and reset for final submission at the session for April, 1947. Counsel were advised that we wished briefs and arguments upon the question of the effect to be given section 7961 of the General Statutes of 1901 in view of the entire record in the case. The cause has now been finally submitted.

At the outset we have concluded that the statement to which appellee objected, and which she asked to have withdrawn and stricken, was not necessary to a decision of the point decided in the opinion. The court does not desire to decide any question against the interests of either party until it has been fully briefed and properly presented. There is danger that such a construction might be at least claimed for the statement in question. It is withdrawn and stricken out. From the date of the publication of this opinion the statement quoted above, appearing in 161 Kan. 603, 170 P. 2d 838, will not be regarded as part of the opinion of this court nor of any force and effect whatever. A question was raised in the briefs which we have concluded to treat in addition to what was decided in the former opinion. Because this question is somewhat novel and involves an examination of some of our early statutes dealing with wills and estates generally we shall restate the facts briefly.

These two appeals arise from a proceeding for the admission of a will to probate in Gray county, Kansas, begun by the trustee of

the estate of a man who died while a resident of Illinois. The trustee also asked that letters of administration be issued to him to administer real estate belonging to the estate located in Kansas. A woman who claimed to be a beneficiary under the will also filed a petition in which she asked full administration of the estate in Kansas and for an accounting.

The contest in the probate and district courts occurred between this trustee and a guardian *ad litem* for certain minors and for a person in the armed services, who were devisees under the will on the one hand and the woman who claimed to be a devisee under the will and interested in the estate on the other.

The will was admitted to probate, a full administration was ordered and an administrator who was a resident of the county appointed. Subsequently the trustee and the guardian *ad litem* filed motions asking that the order appointing the administrator, admitting the will to probate, and for full administration and an accounting, be set aside and the proceedings dismissed. The probate court denied these motions and on appeal the district court entered the same judgment as had been entered by the probate court except that no accounting was ordered.

On May 23, 1945, Clifton M. Warner filed a verified petition in the probate court of Gray county alleging that one Clifton H. Moore had died in Illinois on April 29, 1901. The names of devisees were then stated. The petition further stated the general nature of the property owned by the estate of decedent, and letters of administration were prayed for Clifton M. Warner, trustee and surviving executor under the last will of Clifton H. Moore by virtue of his appointment by the county court of DeWitt county, Illinois, at its May term in 1925. The petition then referred to Moore's last will, which was attached, and stated that by reason of the decedent having died leaving real property within the state of Kansas, it should be admitted to probate in Gray county. The prayer was that the will be admitted to probate and for the appointment of Warner as trustee and executor.

The will devised considerable property and created a trust in favor of children, grandchildren and great grandchildren of the testator. It provided that the executors named should become trustees and administer the trust for the benefit of these devisees after the estate was finally wound up. Exhibit "B" described 12,380 acres of farm land, a part of the estate, all in Gray county, Kansas.

The petition was set for hearing on the 22d of June, 1945. On that date one Mildred Meyer filed a verified application in which she said she was the daughter of Vesper M. Warner, one of the devisees and legatees under Moore's will and entitled to a portion of his estate. She asked the court to require a full administration of the estate within the state of Kansas and that a full accounting be had in Kansas of the estate since Moore's death. On June 22, 1945, on motion of the trustees the court appointed a member of the bar of Ford county as guardian *ad litem* for three minor devisees and one devisee who was in the military service. The guardian filed answers to the trustee's petition in which he said he neither admitted nor denied its allegations but prayed that the petitioner be put on strict proof. On the same date the probate court ordered the will admitted to probate and ordered a full administration of the estate within the state of Kansas and that the matter of appointment of an administrator therefor be continued to July 6, 1945.

On July 6, 1945, the trustee filed a verified application to set aside the judgment rendered on the 22d day of June. He stated that none of his attorneys knew at the time they filed the petition to probate the will and for the appointment of an administrator that Moore's will had already been admitted to probate and record in the probate court of Gray county between November, 1905, and April, 1906, and further alleged that Moore's property situated in the state of Kansas consisted of real estate; that there was no personal property to be assembled or debts to be paid and no further administration was necessary. He prayed that all orders made therein on the 22d day of June, 1945, be set aside and he be permitted to dismiss the petitions at his cost. On the same date the guardian *ad litem* filed an amended answer to the same general effect. He, too, prayed that the order for administration be set aside and that the court find no administration was necessary.

When a will made in 1888 by a testator who died in 1901 is offered for probate in 1945 and involves about 12,000 acres of Kansas real estate attention is challenged at the outset as to just what has been the situation during the intervening years. From the abstracts and briefs as well as the arguments of counsel we glean that the executor named in the will and appointed by the probate court in DeWitt county, Illinois, had managed the Gray county land as executor until 1925. At that time an action had been filed in the district court of Illinois in DeWitt county and pursuant to

the terms of the will the executor had been named trustee of the trust created by the will. Either the trustee named or his successors had managed all of the property of the deceased, including the Kansas land, since that time.

Sometime in 1944 there was some oil and gas activity in and around Gray county and the trustee sought to lease the real estate in question for oil and gas. Some question was raised about his right to give such a lease. The filing by him of the petition to probate the will and for administration followed. It is fair to state from what has been said in the briefs and abstracts that the filing of the application by Mildred Meyer was not expected. She stated in her application that she was one of the devisees under the will because she was the daughter of Vesper M. Warner, who was a grandson of the testator. She has never been recognized as the daughter of Vesper M. Warner or a devisee under the will. As these proceedings now stand that question of fact has never been presented to any court and is not passed on here. The estate has been in existence since 1901. It comprises approximately three million dollars and consists of many thousand acres of real estate in hundreds of tracts in Illinois, Iowa, Ohio, Missouri, Kansas, Nebraska and Georgia. Mildred Meyer asked and was granted in the order of the probate court on June 22 the performance of a stupendous task. There was no allegation in her application whatever as to the necessity for such sweeping and comprehensive accounting and administration. Apparently no question was raised about that in the probate court on June 22 because the hearing on the original petition was set, the guardian *ad litem* was named and filed his pleadings, she filed her application and the relief all parties asked— that is, she and the trustee and the guardian—was granted on that same date. No mention is made in the record before us of any controversy at that hearing.

The next steps in the proceeding were taken on July 6, 1945. Apparently between the dates of June 22 and July 6, 1945, a search of the records in the office of the probate judge of Gray county was conducted. We learn that, because the pleadings filed by the trustee and the guardian *ad litem* on that date, each states they did not know at the time of filing the original petition that the will of Clifton H. Moore had already been admitted to probate and recorded in the probate court of Gray county, Kansas, between November, 1905, and April, 1906, and was fully recorded in Book 1 of Wills, at

pages 209 to 219. On a hearing upon these applications and answers the contest became one in which the trustee and the guardian *ad litem* sought to set aside the orders of June 22, 1945, and to dismiss the proceedings, and Mildred Meyer sought to keep them in effect and to prevent their being dismissed.

For the sake of clarity we quote from the order of the probate court stating the grounds given by Mildred Meyer in the probate court as to why the proceeding should not be dismissed.

"Thereupon the attorneys for Mildred Meyer objected to the granting of the applications and prayers of the amended answers for the reason that the proceedings referred to in Book 1 of Wills, pp. 209-219, are incomplete, that the purported will copied in said book was not properly authenticated, without legal force or effect and the same was not admitted to probate in accordance with the statutes of Kansas, and for the further reason that the purported trustee was never authorized or appointed by any court in Kansas, in which state the land in question is situated; he has no authority to act in Kansas or to transfer or distribute or handle the real estate located in Gray County and elsewhere in the state of Kansas without proper proceeding within the state of Kansas."

The appeal to the district court by the trustee and the guardian *ad litem* was from the order of June 22, 1945, and that of July 6, in which the court refused to set aside the former orders. The district court heard the cause as though it had been brought there originally. No new pleadings were filed. The probate judge identified Book 1 of the Wills as part of the records of her office and stated that it was the first record of Wills in that court; that on page 209 she found a certificate, as follows:

"State of Illinois
"DeWitt County: SS
"I, Warner Hickman, Clerk of the County Court in and for the said county in the state aforesaid (the said court being a court of record and having a seal) do hereby certify that the annexed instrument in writing is a true copy of the last will and testament and codicil of Clifton H. Moore, deceased, as proven and admitted to record in said court on the 3rd day of June, A. D., 1901, as appears from the records of said court in my office."

And that following this certificate was a verbatim copy of the will of Clifton H. Moore; that the date of recording of an instrument prior to the recording of the above was November 9, 1905, and the first date showing a recording subsequent to the Moore will was April 9, 1906. She also testified that she had searched her records and found no case file relative to the above certificate and will. The Book of Wills was offered in evidence but an ob-

jection to it by Mildred Meyer was sustained. It was stipulated that Mildred was forty-three years old. Over the objection of Mildred the affidavit of the trustee was admitted. This affidavit was to the general effect that he was trustee of the estate and had been for twenty years; that Clifton H. Moore died a resident of DeWitt county, Illinois, April 28, 1901; that his last will and codicil were admitted to probate and record in the county court of that county that year; that due administration was had on it and all claims against it were allowed and paid; that the estate owed no debts and owned no personal property in Kansas.

The district court recited the orders of the probate court of June 22 and that of July 6, which refused to set aside the order of June 22; it then overruled the demurrer of the trustee to Mildred's evidence on the ground that she did not have any right to be heard. The court then made the following order:

"It is Therefore Ordered, Adjudged and Decreed by the Court that the appeals be overruled and that the orders appealed from to-wit, the order of June 22, 1945, and the order of July 6, 1945, admitting the Last Will and Codicil of Clifton H. Moore to probate in Gray County and ordering full administration thereon in Gray County and directing that an administrator be appointed in said estate in Gray County, and the order refusing to set aside said order admitting said Last Will and Testament and Codicil to probate, be and the same are hereby sustained, and affirmed."

The district court heard this case on appeal from the probate court. It exercised the same jurisdiction as though the controversy had been by an action in that court. (See G. S. 1945 Supp. 59-2408.) Consequently the form of the final judgment should have been that the trial court ordered the will admitted to probate, appointed an administrator and ordered a full administration rather than as above. The judgment as finally made, however, will be considered by us as though it was stated in the language used by the probate court.

The guardian filed his motion for a new trial on the grounds of erroneous rulings and abuse of discretion by the trial court that the judgment was contrary to the evidence and contrary to law. The evidence taken at the trial was taken again at the hearing on this motion because there had been no official reporter at the trial. The motion was overruled.

The trustee and the guardian *ad litem* appealed from the judgment wherein the trial court overruled the appeals from the orders of June 22 and that of July 6 admitting the will to probate and

ordering full administration in Gray county, and the order refusing to set aside the order admitting the will to probate; and the trustee appealed from the decision overruling his demurrer to the application of Mildred Meyer and from the same order overruling his demurrer to her evidence. The guardian *ad litem* appealed from all orders and judgments including the denial of his motion for a new trial.

The specifications of error are that the trial court erred in admitting the will and codicil to probate, in ordering administration, in excluding from the evidence a former record of the probate of the same will and codicil and in overruling the appellants' motion for a new trial.

It will be remembered that Mildred Meyer in the probate court gave as her reason why the original petition should not be dismissed certain infirmities and irregularities in the proceedings attendant on the recording of the will in 1905 or 1906, and argued that without proper probate proceedings in Gray county the trustee was without authority to act in Kansas. The probate court and on appeal the district court apparently were favorably impressed with these reasons.

Appellants argue here as to specifications of error two and four that the trial court erred in ordering the administration and the appointment of an administrator because no administration was necessary under the circumstances. In our former opinion we held that the trial court did err in that respect. We placed our opinion of reversal upon that ground. We so held without passing on the proceedings of 1905. (See *In re Estate of Moore,* supra.) To what was said by us there on the above question we still adhere.

We have concluded to deal further in this opinion with the effect to be given the proceedings of 1905 in view of our statutes in force at that time. The appellants argue that the trial court erred in refusing to admit in evidence the copy of the will and the certificate from Book 1 of Wills of the probate court. Mildred Meyer points out the certificate, which has already been set out here, and to the fact that no case files could be found by the present probate judge. She argues that such a record does not disclose a sufficient compliance with the statute to entitle this copy to any weight whatever. We shall first examine that proposition.

The statute in effect at that time was G. S. 1901, § 7961. It was originally section 24 of chapter 117 of the General Statutes of 1868. It also appears at G. S. 1935, 22-227. It provides as follows:

"Authenticated copies of wills executed and proved according to the laws of any state or territory of the United States, relative to any property in this state, may be admitted to record in the probate court of any county in this state where any part of such property may be situated; and such authenticated copies so recorded shall have the same validity as wills made in this state in conformity with the laws thereof. When any such will or authenticated copy has been or shall hereafter be admitted to record in the probate court of any county in this state where any part of such property may be situated, a copy of such recorded will, with a copy of the order to record the same annexed .thereto, certified by the probate judge under the seal of his court, may be filed and recorded in the office of the probate court of any other county in this state where any part of such property is situated; and it shall be as effectual in all` . cases as the authenticated copy of said will would be if proved and admitted to record by the court."

Mildred Meyer calls our attention to section 371 of chapter 80 of G. S. 1868, which in 1905 was G. S. 1901, § 4819, and is now with some amendments not now important G. S. 1935, 60-2853. That section read as follows:

"Copies of records and proceedings in the courts of a foreign country may be admitted in evidence, upon being authenticated as follows: First, By the official attestation of the clerk or officer in whose custody such records are legally kept; and, Second, By the certificate of one of the judges or magistrates of such court, that the person so attesting is the clerk or officer legally intrusted with the custody of such records, and that the signature to his attestation is genuine; and, Third, By the official certificate of the officer who has the custody of the principal seal of the government under whose authority the court is held, attested by said seal, stating that such court is duly constituted, specifying the general nature of its jurisdiction, and verifying the seal of the court."

She points to the word "authenticated" in G. S. 1901, § 7961, and then to the provisions of G. S. 1901, § 4819, as to the authentication of records and documents of a foreign country, and argues that the will in this case was not properly authenticated when it was offered in 1905 because the record now shows only the certificate of the officer or clerk in whose custody the will itself was kept and did not have the certificate of one of the judges of the court that the person so attesting was such clerk and his signature genuine. She argues that on account of the above the will and certificate as we find it in Book 1 of Wills of the probate court of Gray county is of no value whatever as evidence. She argues that since the presumption is that the probate judge of Gray county in 1905 would obey the law, and since the law required that a foreign will be authenticated in a certain manner, and since the record we find there today does not disclose such authentication, then the presump-

tion must be that the probate judge did not admit this will to record and it is of no value whatever as evidence.

The trouble with this argument is that it asks us to overlook the fact that the will was actually recorded. We know that. The will is there for us to see. It was recorded in compliance with another old statute, being section 3010 of G. S. 1901, which provides as follows:

"The probate judge shall record in the proper books to be provided for that purpose by the county, all wills admitted to probate; all letters testamentary or of administration, and all bonds of executors or administrators, before the letters shall be issued; all inventories, appraisements and sale bills; all petitions for the sale of real estate, and the proceedings and other papers connected therewith; all accounts and settlements of any executor or administrator, but not the vouchers; and all other acts and proceedings of the court relating to the estate."

This section was 204 of G. S. 1868. The section must be construed together with G. S. 1901, § 1974, which was section 1 of chapter 29 of G. S. 1868. That section provides, in part, as follows:

"The probate courts shall be courts of record, and, within their respective counties, shall have original jurisdiction: *First,* To take the proof of last wills and testaments, and admit them to probate; and to admit to record authenticated copies of last wills and testaments executed, proved and admitted to probate in the courts of any other state, territory or country."

It seems to have been the intention of our lawmakers from the beginning that wills executed and admitted to probate in another state needed only be recorded in a county in this state where the property was located in order to become effective there. It was not necessary that they be offered for probate.

When the copy of the will in this case was offered to the probate court of Gray county the court had only to satisfy itself that the will had been executed and proved according to the laws of Illinois. The authentication was the means provided for this determination. If witnesses had been brought out to Gray county to take the stand and testify to that effect no one would have questioned the regularity of the proceedings even though the testimony had not been recorded. Clearly the court did act on whatever was before it. For all we know, the person who copied the matter into Book 1 of Wills, which was found, merely failed to copy the certificate of the judge of the county court of which Warner Hickman was a clerk. We are unable to say from this record that such a certificate was not presented with the copy of the will. The statute does not say

the authentication shall be recorded. It says the copy shall be recorded.

In *State v. Merriweather*, 136 Kan. 337, 15 P. 2d 425, we dealt with a statute which provided that where one had been convicted of a felony in this state his punishment could be doubled if he had been formerly convicted of a felony. Before the defendant was sentenced a certified copy of proceedings in a district court of Nebraska was introduced to show a former conviction there. The statute provided that the former conviction could be shown by authenticated copies of the proceedings. The county attorney who conducted the prosecution in Nebraska had been present at the trial in Kansas and testified as to the former conviction and identified the documents and the various officers. On appeal, it was argued in this court that the former conviction was not properly shown because the statute provided it could be shown by the production of an authenticated copy. We said:

"The statutes relating to authentication of copies of records and proceedings of foreign courts were not designed to supersede other methods of proof. The subject is discussed by Wigmore as follows:

" 'The whole purpose of the process of authentication by presumed genuineness, judicial notice, and certificates of authority, is to avoid the inconvenience and expense of calling witnesses in the ordinary way to prove that which is seldom fairly disputable. The formalities so available by the common law or by statute are thus clearly not prescribed for their own sake, as being a necessary accompaniment of the process of authentication, but merely as substitutes for a more tedious and undesirable method. If, then, a party wished to resort to the more cumbrous method which would otherwise be necessary, the law will interpose no obstacle. It has merely endeavored to facilitate his proof; if he chooses to repudiate this assistance and proceed by the other method, he is at liberty to do so. It follows that if he attempts to avail himself of the more convenient method specially furnished, and fails to employ it properly, he may then nevertheless fall back upon the more cumbrous method which would have been open to him in the beginning had he chosen. In other words, he may supply by other testimony the defects of a certificate of authentication.' (3 Wigmore on Evidence, § 1679, p. 565.)" (p. 339.)

This is sound authority for the conclusion we have reached that it was not required that the authenticity of the will from Illinois be shown by authenticated copies or that the authentication be shown as part of the recorded copy in the records of the probate court. (See G. S. 1901, § 1726.) This section was carried into our law and up to the time the new probate code was adopted could be found in G. S. 1935, 19-1102. It now appears in substantially

the same form as far as this case is concerned in G. S. 1945 Supp. 59-202. This is added argument that the same person who was clerk of the probate court and actually made the copy of the will which was found was the probate judge who passed on the question of whether or not it had been probated according to law in the state where made and the probate properly shown.

In connection with G. S. 1901, section 7961 *supra,* sections 7962 to 7965, inclusive, should be considered. They provide as follows:

"A will executed, proved and allowed in any state or country other than the United States and territories thereof, according to the laws of such foreign state or country, may be allowed ánd admitted to record in this state in the manner and for the purpose mentioned in the following sections.

"A copy of the will and probate thereof, duly authenticated, shall be produced by the executor or by any person interested therein, to the probate court of the county in which there is any estate upon which the will may operate, whereupon said court shall continue the motion to admit such will to probate for the term of two months; and notice of the filing of such application shall be given to all persons interested, in some public newspaper printed or in general circulation in the county where such motion is made, at least three weeks consecutively, the first publication to be at least forty days before the time set for the final hearing of the motion.

"If on hearing it shall appear to the court that the instrument ought to be allowed in this state, the court shall order the copy to be filed and recorded, and the will and the probate and record thereof shall then have the same force and effect as if the will had been originally proved and allowed in the same court in the usual manner; but nothing herein contained shall be construed to give any operation or effect to the will of an alien different from what it would have had if originally proved and allowed in this state.

"After allowing and admitting to record a will pursuant to the four preceding sections of this act, the court may grant letters testamentary thereon, or letters of administration with the will annexed, and may proceed in the settlement of the estate that may be found in this state; and the executor taking out letters, or the administrator with the will annexed, shall have the same power to sell and convey the real and personal estate, by virtue of the will or the law, as other executors or administrators with the will annexed shall or may have by law."

These sections provided the method of procedure in cases where a will admitted to probate in another state devised property in this state. The sections throughout spoke of "recording" and "admitting to probate" as two distinct matters. G. S. 1901, § 7966, provided that no will should be effectual to pass real or personal property in this state unless it should have been duly admitted to probate or recorded as provided in the act. Clearly an expression of intention that a will admitted to probate in another state need only

to be recorded in a county where property was located to pass title to that property.

The argument of appellee here is in effect an attack upon the action of the probate court in recording the copy of this will in 1905 or 1906.

Our probate court in 1905 was a court of general jurisdiction as to wills and the estates of deceased persons. (See G. S. 1901, § 1974; *Watkins v. Mullens*, 62 Kan. 1, 61 Pac. 385; also *Howbert v. Heyle*, 47 Kan. 58, 27 Pac. 116.) The absence from the record of certain procedural steps having been taken does not require a striking down of the judgment or order. (See *Chamberlain v. Thorne*, 145 Kan. 663, 66 P. 2d 571.) In the above opinion we said:

"A probate court, in this state, relative to an order of adoption, is a court of general jurisdiction; the failure of the record to show affirmatively the existence of facts essential to jurisdiction is not sufficient to defeat the judgment upon a collateral attack; where the record is merely silent the presumption is that the necessary jurisdictional facts existed." (Syl. ¶ 2.)

(See, also, *Denton v. Miller*, 110 Kan. 292, 203 Pac. 693.)

It was not required that any order be made admitting the will to record. (See *Gemmell v. Wilson*, 40 Kan. 764, 20 Pac. 658; and *Niquette v. Green*, 81 Kan. 569, 106 Pac. 270.) All that was required was the actual recording. There is no doubt but that that was done. (See *Howbert v. Heyle*, supra.) In *Calloway v. Cooley*, 50 Kan. 743, 32 Pac. 372, a will admitted to probate in another state was offered for record and recorded here. Subsequently in a collateral proceeding the authentication was attacked. We said:

"It is next contended that the authentication of the will was insufficient, and that therefore the plaintiffs' motion for judgment on the findings should have been allowed. The authentication appears to be substantially correct, but its sufficiency having already been adjudged by a competent tribunal, it is not before us for decision. It appears from the findings that an application was made in the probate court of Lyon county by the executor to have a copy of the will admitted to record in that court, and upon a hearing duly had, it was found that the will presented was a duly-authenticated copy of the will of James Calloway, deceased; that it had been executed, proved and admitted to probate according to the laws of North Carolina, and that the authentication thereof is in due form of law; it was further found, that the will related to property in Lyon county, Kansas; and upon these findings an order was made that the authenticated copy of the will be admitted to record in that court and duly recorded. The probate court is vested with full power to inquire into the sufficiency of the authentication and to ascertain whether, under the proof offered, the will should be admitted to record. Being vested with jurisdiction, its finding and determination are final, unless corrected upon appeal or proceedings in error, and are not subject to collateral attack.

"The statutes provide that the existence of certain facts are necessary before a will executed and proved in another state can be admitted to record in this state. One of the requisite facts is, that the copy of such will presented for record shall be duly authenticated. This fact is to be determined upon proof, and the authority to determine it is conferred upon the probate court. (Gen. Stat. 1889, ¶¶ 2932, 7228.) Anything indicating a contrary view in *Gemmell v. Wilson*, 40 Kan. 764, is not controlling, as in that case the existence of the requisite facts for admission to the record were conceded. Under the statutes, these requisite facts must be determined by the probate court; and it having exercised the jurisdiction, its determination, although it may have been erroneous, is conclusive upon all interested parties and all courts, until it is reversed or reviewed in some appropriate proceeding." (p. 753.)

Appellee argues that the foregoing decision is not in point here because there was an attempt at an authentication in that case and none here. The difference, however, does not detract from the weight to be given what we held as to the action of the probate court in recording the will upon the evidence furnished. We conclude that the court erred in sustaining the objection of Mildred Meyer to the copy of the will as it was found copied in Book 1 of Wills. The will should have been considered by the trial court.

Having reached this conclusion on this phase of the case we are next confronted with the question of the effect this recording of the will had on the application of Mildred Meyer for administration of the estate. She argues that no one claiming under the will had any title to the real estate in Kansas until the will was probated in Kansas. She argues specially in her brief on rehearing that her claim under the will insofar as it affects land in Kansas may be adjudicated in Kansas courts. We find no fault with that general rule, as announced in the authorities furnished us by appellee.

They have no application to this record. At the time the will was recorded in Kansas pursuant to G. S. 1901, § 7961, other statutes in force were sections 8003 to 8006. These were as follows:

"Trusts created by a will made out of this state and relating to lands situated in this state may, after the will is duly admitted to record in this state, be executed as hereinafter provided.

"If a trustee is named in such foreign will, he may execute the trust upon giving bond to the state of Kansas in such sum and with such sureties as shall be approved by the probate court of the county in which said will is recorded, conditioned to discharge with fidelity the trust reposed in him; and when the testator in the will naming the trustee shall have ordered or requested that bond should not be given by said trustee, the bond shall not be required, unless from a change in the situation or circumstances of the trustee or for other sufficient cause the probate court shall think proper to require it.

"If a trustee has been appointed by a foreign court according to the laws of

the foreign jurisdiction, he may execute the trust upon giving bond as provided in the preceding section, and satisfying the probate court of the county in which said will is recorded, by an authenticated record of his appointment, that he has been duly appointed trustee to execute the trust.

"The said probate court may when necessary, on application by petition of the party or parties interested, appoint a trustee to carry into effect a trust created by a foreign will, which trustee, before entering upon his trust, shall give bond with such security and in such amount as such court shall direct."

Note, also, G. S. 1901, § 2953. That section is as follows:

"Whenever in any will which heretofore has been or hereafter shall be executed and proved in any state or territory of the United States, power is given to the executor or administrator with the will annexed to sell or convey real estate of the testator, any executor of such will or administrator with the will annexed of the estate of the testator, duly appointed and qualified in any state or territory of the United States in which such will shall have been executed and proved, may sell and convey the real estate of the testator in this state, in pursuance of the power given in the will, as effectually and to the same extent as if letters testamentary or of administration with the will annexed of the estate of the testator had been duly granted to such executor or administrator in and under the provisions of the laws of this state, unless at the time of such sale and conveyance administration upon the estate of the testator shall have been granted in this state: *And provided,* That at the time of such conveyance a copy of such will shall have been recorded in the office of the probate court in the county in which any land so conveyed is situated, as authorized by section twenty-four of chapter one hundred and seventeen of the General Statutes."

This record does not disclose whether the executor in Illinois and later the trustee there followed either one or the other of the statutes. With that we are not concerned now. Either course was open to him. Both statutes clearly provided that they shall be applicable once the foreign will was "recorded" in this state. It did not have' to be admitted to probate. We here hold the will in this case was properly recorded. It follows that the reason the trustee gave for asking for the probate of the will and for a full administration of the estate in Kansas did not exist.

He should have been permitted to withdraw the petition and dismiss the proceedings. There was no necessity for an administration of the estate in Kansas on the application of Mildred Meyer. Her application should have been denied.

The original judgment of reversal is adhered to.

Hoch, J., not participating.