No. 38,415

Mildred Meyer, *Appellee*, v. Winifred Warner Rogers, Fred F. Rogers, Elizabeth Dowdall Hyatt, John Kenneth Hyatt, John Kenneth Hyatt, Jr., Elizabeth P. Hyatt, Clifton Moore Warner Hyatt, Ella May Warner, Mary Frances Warner Crist, John Warner, Gertrude Warner, John Warner III, Clifton M. Warner, Maude B. Warner, Orlando H. Piper, Trustee for James MacMillan, Deceased; Orlando H. Piper, Trustee for Nellie Piper Moore; and Clifton M. Warner, as Trustee and Executor of the Last Will and Testament and Codicil of Clifton H. Moore, Deceased, *Appellants*.

(244 P. 2d 1169)

Opinion filed June 7, 1952.

*W. C. Gould,* of Dodge City, argued the cause, and *R. R. Mitchell,* of Dodge City, and *Hal M. Stone,* of Bloomington, Illinois, were with him on the briefs for the appellants.

*W. A. Kahrs* and *Keith L. Wallis,* both of Wichita, argued the cause, and *Robert H. Nelson* and *Clarence N. Holeman,* both of Wichita, and *C. Chesterman Linley,* of Cimarron, and *E. C. Minner,* of Dodge City, were with them on the briefs for the appellee.

The opinion of the court was delivered by

Price, J.: This was an action brought under the declaratory

judgment act by Mildred Meyer, appellee (hereinafter referred to as plaintiff), the alleged recognized illegitimate daughter of one Vesper Warner (hereinafter referred to as Vesper), to determine her rights as a beneficiary of and for an accounting of her alleged interest in the rents and profits from real estate situated in Kansas which is a part of a trust estate created by the provisions of a last will and testament and codicil thereto of Clifton H. Moore (hereinafter referred to as the testator) who died a resident of DeWitt County, Illinois.

Appellants (hereinafter referred to as defendants) are the surviving beneficiaries of the trust, together with the acting trustees thereof. None of them ever lived in Kansas.

Another phase of litigation involving this trust estate has been before this court previously and will be found in the opinion of *In re Estate of Moore*, 161 Kan. 603, 170 P. 2d 838, and on rehearing at 163 Kan. 147, 181 P. 2d 299. Whatever was said in those opinions which throws light on the historical factual background of the matter now before us is by reference incorporated herein. The instant action was commenced on June 12, 1947.

The testator, a resident of Illinois, executed his last will and testament in 1888. At that time he had two children, Arthur Moore and Winifred Moore Warner. After making a number of bequests to friends and relatives, item twelve of the will provided:

"I give, grant, devise, and bequeath to my Executors all my real estate, personal estate, and mixed estate of every nature and kind whatsoever, which I may possess and which has not been heretofore disposed of in fee, but in trust for the purposes heretofore named, and hereinafter named, and for no other or different purpose. . . . the sum remaining is to be equally divided yearly and paid along as the same comes in equally to my son, Arthur Moore, and to my daughter, Winifred Moore Warner, subject to the legacies and annuities hereinbefore named. At the death of my son, without issue him surviving the share given to him, less the six hundred dollars per year which is to be paid to his wife, Nellie during her natural life is to be paid to my daughter. Should my daughter depart this life before my son, her share of the rents, interest, and increase of my Estate is to be paid to and for the benefit of her children, and at the death of my son and daughter, then the whole of said rents, interest, and increase are, less taxes and improvements and expenses, to be paid to the children of my said son and daughter, or the survivor of them, per stirpes and not per capita, but while they are minors, only enough shall be paid to each to educate them, but subject to the annuities hereinbefore named after the death of the last one of my grandchildren, said rents, interest, and increase of my Estate is to be paid to their children and their descendants per stirpes and not per capita for the term of twenty years, but while they are minors, only enough is to be paid to properly care for and

educate them at the end of which said twenty years, all of said real estate is to be sold at such terms and in such manner as shall be deemed by my Executors, or their successors, be deemed best, and the money arising from sale be divided according to rights of my said heirs, or if said Executors deem it best, they may fairly divide said lands between my said heirs according to their rights per stirpes, continuing the payment of the annuities herein until the death of each annuitant. . . ."

The daughter Winifred died in 1894, survived by her husband Vaspasian and five children—three sons and two daughters—among them being Vesper, the alleged father of plaintiff.

Shortly after the death of his daughter Winifred the testator executed a codicil to his will which, among other things, provided:

"Whereas since the making of my Last Will and Testament, dated September 28, 1888, my dearly beloved daughter, Mrs. Winifred Moore Warner, has departed this life, leaving her surviving three (3) sons and two (2) daughters. It is my will and I do hereby direct my said Executors to hold all my real, personal, and mixed property in said will named (subject to the specific division and annuities named in said will) in trust and for the benefit of my son Arthur Moore, and the children of my daughter one-half part to and for the benefit of my son Arthur Moore, rents and interest to be paid to or kept by him as it accrues, the other one-half part is to be paid to the sons and daughters in person of my daughter in equal part, share and share alike, only if any of them are minors, only enough of said rents, interest, and accumulation are to be paid to them, as may be sufficient to feed, clothe, and educate such minors. Should any of said five children depart this life leaving children or a child, then the share of such deceased is to be paid to such child or children, or survivors per stirpes and not per capita, until the arrival of the time when my whole estate is to be divided as set forth in my said will."

The testator died on April 29, 1901, survived by his wife Rose, his son Arthur, and his five grandchildren who were the children of his prior deceased daughter Winifred. The will and codicil were duly admitted to probate in DeWitt County, Illinois. We are not concerned with the rights, if any, of the testator's widow in the estate. She died in 1907. Arthur, the son, died in November, 1901, without issue or the issue of any prior deceased issue. His wife survived him by several years, but we are in no way concerned with her rights, if any, under the will and codicil.

It will thus be seen that upon the death of Arthur the immediate beneficiaries of the trust created were the five living children of Winifred, they being grandchildren of the testator.

Included in the trust estate were in excess of 12,000 acres of real estate situated in Gray County, Kansas. The will and codicil were duly recorded in the probate court of that county some time between November 9, 1905, and April 9, 1906. The land in Gray

County has been held intact, is still a part of the estate, and has been operated over the years by the trustees acting under the jurisdiction of the Illinois court.

Prior to the trial of this action the parties entered into certain stipulations at a pretrial conference. Among them were that plaintiff is an illegitimate child; that she was born on January 24, 1902; that no children were born as the result of the marriage of Vesper and Ella May Johnston which occurred on May 29, 1901; that all proceeds of the trust estate in Gray county have been paid to the trustees, to the exclusion of plaintiff, and that she has received nothing from the estate.

At the conclusion of the trial the court made extensive conclusions of fact and of law. A number of the former are recitals of formal matters heretofore referred to and will not be repeated.

Among other things, and concerning which there is no dispute, the court found that of the five grandchildren of the testator (they being the children of his prior deceased daughter Winifred), Clifton M. Warner, Mary Frances Crist and Winifred Warner Rogers are living, and that the other two, John Warner II and Vesper, are deceased, the latter having died on April 10, 1912, intestate, leaving surviving him his widow, Ella May Johnston Warner, she having died since the filing of the action. We are not concerned with what rights, if any, she may have had under the will and codicil.

The court further found that plaintiff was the illegitimate daughter of Goldendine Baker (hereinafter referred to as Goldie) and Vesper; that Vesper recognized plaintiff as his child, and that such recognition was general and notorious as contemplated by G. S. 1935, 22-122, and G. S. 1949, 59-501.

As conclusions of law the court held, among other things, that the will and codicil violate the rule against perpetuities in that the attempt to vest an estate in the great-grandchildren of the tesator was too remote; that the finding and judgment of the district court of Gray county rendered in November, 1945, in another proceeding, to the effect that the will and codicil did not violate the rule against perpetuities, was void and of no effect; that plaintiff was not barred by laches or any statute of limitations from instituting her action; that plaintiff was entitled to inherit from the estate as a child of Vesper under the Kansas law of descent and distribution; and that she was entitled to an accounting of the rents and profits from the Kansas real estate for a period of not to exceed three years prior to the filing of the action. Her interest therein was found to be an un-

divided 2/25, but in view of our holding it is unnecessary to discuss the formula by which the court arrived at that figure.

Defendants' motions to strike certain findings and conclusions, to modify others, and for additional findings and conclusions, were overruled, as was also their motion for a new trial. Judgment was entered in accordance with the findings and conclusions and defendants have appealed, alleging eleven specifications of error.

The appeal was argued at the November, 1951, session of this court, following which counsel for both sides were requested to file briefs on several questions not urged or argued in the original briefs, and the cause was set down for further argument at the May, 1952, session. Counsel complied with our request, and further oral argument was had at the May session.

It is of course apparent that in order for plaintiff to recover anything, either as a beneficiary under the will and codicil or under the law of descent and distribution of Kansas, depending upon the interpretation of the will, it was incumbent upon her to establish that she was a child of Vesper and that his recognition of her as such was general and notorious. We think that no good purpose would be served by spreading upon our records the details of the early-day romance in Cimarron between Vesper and Goldie, the mother of plaintiff. The mother testified in the court below that Vesper was plaintiff's father. The record establishes that Vesper married another woman about a month after Goldie became pregnant with plaintiff. At least two actions—one civil and one criminal—concerning the intimate relations of Goldie and Vesper, were filed against him in Gray county shortly after the birth of plaintiff. From the record before us the disposition of those cases is not clear due to the fact the court records were either lost or destroyed. Not long afterward Vesper and his wife, to whom he was married eight months prior to plaintiff's birth, left Cimarron and did not return until some time in about 1911. The evidence establishes that on at least two occasions he, in the presence of other persons, referred to plaintiff as "my baby," or words to that effect. On one occasion, not long after plaintiff's birth, in the Santa Fe station in Dodge City, he, in the presence of two friends of Goldie, gave the latter a silver cup with the name "Mildred" engraved on it, and told Goldie that if she needed anything to let his father know. From time to time Vesper's father exhibited a keen interest in plaintiff's schooling while in the public schools of Cimarron and the University of Kansas. On several occasions he sent money to her as presents. Much

evidence was introduced to establish the fact that at the time and down through the years it was a matter of "common knowledge and repute" in and around the town of Cimarron that Vesper was plaintiff's father.

Defendants vigorously contend the most that can be said for all of this evidence is that it amounts to nothing more than "tongue-wagging gossip," and they rely upon language contained in the dissenting opinion in the case of *Smith v. Smith*, 105 Kan. 294, 182 Pac. 538, in which it was said that it must not be forgotten that what the statute deals with is not notoriety of paternity but notoriety of recognition of the child by the father—the one person who, under the statute, could confer heirship.

As an abstract and purely academic statement of the law the rule contended for is of course correct, but in applying it to the facts before us we think defendants overlook the fact that this court does not weigh evidence and that where the trier of the facts finds certain things from conflicting evidence such findings will not be disturbed on appeal. We have examined this evidence in detail and are unable to say that the lower court's finding that plaintiff was the daughter of Vesper, and that his recognition of her as such was general and notorious within the meaning of our statute, is unsupported by competent evidence. We proceed, therefore, to a discussion of plaintiff's rights to share in the rents and profits from the Kansas real estate owned by the trust.

One of the court's findings (and of which plaintiff does not complain) was that plaintiff knew, or with diligence should have known, of all rights she now claims from and after April 10, 1912 (the date of Vesper's death), and that she could have had ever since that date the same right to proceed by attachment as she did at the commencement of this action, and it is strenuously argued by defendants that she is barred by laches and the statute of limitations, citing *Herthel v. Barth*, 148 Kan. 308, 81 P. 2d 19, 119 A. L. R. 326, and other authorities. We think, however, that the facts before us and the nature of the relief sought in the instant case readily distinguish it from the Herthel case which was an action against nonresidents to impress a constructive trust on land in this state and in which it was held the action was one *in rem* which might have been brought at any time after the cause of action accrued, and the nonresidence of defendants thus did not toll the statute of limitations.

It is true that plaintiff waited some thirty-five years after Vesper's

death before bringing this action. On the other hand, the action is not one to impress a trust upon real estate or to establish an interest therein, as such. It is one to construe a will and codicil and to determine plaintiff's rights as a beneficiary thereunder, and for an accounting of her share of the rents and profits from the Kansas real estate owned by the trust. It has not been shown that any parties defendant have changed their position in reliance upon some fact within the control of plaintiff. No rights of third parties have intervened. Other than the fact plaintiff has been paid nothing, defendant trustees have not "renounced" the trust as to her for the simple reason that until she established the fact of her being the recognized illegitimate daughter of Vesper she of course had no standing whatsoever as a beneficiary. We have examined all contentions on this point and agree with the trial court's conclusion that the action was not barred by laches, stale claim or any statute of limitations.

Defendants also contend that in reality the action amounts to a "will contest" and, not being brought within the statutory period for the commencement of such an action, is barred for that reason. We think this contention is without merit. In no sense of the word can it be said that plaintiff is seeking to "contest" the will and codicil or in effect to destroy it. Her action is in reality one to construe the will and codicil and to determine her rights thereunder.

We come now to the holding of the lower court that the will and codicil violate the rule against perpetuities. As before mentioned, the court held that the prior judgment of 1945, that they did not violate the rule, was void and of no effect. That judgment was rendered by the same court in a proceeding brought to construe the will and codicil for the purpose of defining oil lease rights on the real estate here involved. No useful purpose would be served by setting out and discussing the various contentions of the parties as to why that judgment was, or was not, void. We have examined the record of the proceedings leading up to its rendition and are unable to follow the reasoning of counsel and the trial court as to why it was void. The parties to the present action were parties to that proceeding. The district court of Gray county had jurisdiction to render such judgment, and, no appeal being taken from it and it not having been vacated or set aside in any proceeding, it became a final judgment and is *res judicata* on the question. In passing, it is noted that in a proceeding in the circuit court of DeWitt county,

Illinois, in 1930, that court also held that the will and codicil were not violative of the rule against perpetuities.

Thus, it having been judicially determined in this state that the will and codicil do not violate the rule against perpetuities, the remaining question narrows down to a determination of plaintiff's rights under those instruments. Defendants contend that a Kansas court has no power or jurisdiction to decide the question and that the only proper forum is the Illinois court having jurisdiction over the trustees. We cannot agree.

It is to be remembered that this action is one to establish plaintiff's rights to share in the income from the Kansas real estate. Although measured in dollars and cents—and thus "personalty" in that sense of the word—we are not dealing with personal property owned by the testator at the time of his death. We are concerned with income from land situated in this state. It is a familiar rule of law that, while the descent of personal property is governed by the law of a decedent's domicile, the descent and devolution of real estate is governed by the law of the state in which it is situated. *Larned v. Larned,* 98 Kan. 328, 158 Pac. 3; *Riemann v. Riemann,* 124 Kan. 539, 262 Pac. 16; and *Clarke v. Clarke,* 178 U. S. 186, 190, 191, 44 Law. Ed. 1028, 1031, where it was said:

"It is a doctrine firmly established that the law of a state in which land is situated controls and governs its transmission by will or its passage in case of intestacy. . . . 'It is a principle firmly established that to the law of the state in which the land is situated we must look for the rules which govern its descent, alienation, and transfer, and for the effect and construction of wills and other conveyances. . . .'"

That this is also the law of Illinois is firmly established by the recent case of *Sternberg v. St. L. Union Tr. Co.,* 394 Ill. 452, 68 N. E. 2nd 892, reported at 169 A. L. R. 545. There the testator, a Missouri resident, married subsequent to the execution of his will. No children were born of the marriage and the testator was survived by his widow and four brothers and sisters as his only heirs at law. Under the Missouri statute his will was not revoked by his subsequent marriage, without issue. Included in his estate was land in Illinois. Under Illinois law, in the absence of evidence in the will of a specific contrary intention, the marriage of a testator operated *per se* as a revocation of all prior wills. The question was whether his will was to be regarded as revoked with respect to the devolution of the Illinois real estate. The court held that it was, and said:

"The rule is established in this State and, we believe, in all States, that the

validity and construction, as well as the force and effect of all instruments affecting the title to land, depend upon the laws of the State or country where the land is situated." (p. 456.)

Defendants further contend that plaintiff is not a "child" within the meaning of the will and codicil which provide that upon the death of any of the five grandchildren leaving a child or children the share of such deceased grandchild is to be paid to such child or children, and reliance is had upon an Illinois statute to the effect an illegitimate child can inherit from the father only when its parents intermarry and when it is acknowledged by the father as his child.

What has already been said with reference to the law of the *situs* of real estate, rather than the law of a testator's domicile, governing the construction of a will and the devolution of real estate, is a sufficient answer to this contention. Insofar as Kansas law is concerned plaintiff has established herself to be the child of Vesper, and accordingly stands in his stead with respect to the income from the real estate located within this state. As bearing on the general proposition see *McLean v. McLean,* 92 Kan. 326, 140 Pac. 847; *Martin v. Martin,* 93 Kan. 714, 145 Pac. 565; *Hanson v. Hoffman,* 150 Kan. 121, 91 P. 2d 31; *Singer v. Wilson,* 151 Kan. 621, 100 P. 2d 985; and G. S. 1949, 59-501.

All other contentions of the parties have been noted and given careful consideration, but in our opinion require no discussion.

The judgment of the lower court, being based upon the premise that the will and codicil violate the rule against perpetuities, also decreed plaintiff to be the owner in fee of 2/25 of the real estate owned by the testator. For reasons heretofore stated, that part of the judgment is reversed and vacated. In conclusion, our holding is this:

Our decision in this case is limited solely to the question of plaintiff's right, as a beneficiary under the will and codicil, to a share of the rents and profits from the real estate situated in Kansas. We are in no way concerned with the title to or ownership of that real estate, present or future, and neither are we concerned with other land included in the trust situated in other states. Subsequent to the death of testator's son Arthur, Vesper, as one of the five grandchildren, was entitled to receive an undivided one-fifth interest of the net rents and profits from the Kansas real estate. The trust created extends until the expiration of twenty years from the death of the last surviving grandchild. Three of them are still living. Upon the death of a grandchild his or her share of the income

passes to the child or children of such deceased grandchild, *per stirpes*. Plaintiff is the only child of Vesper and as such is entitled to his one-fifth share of the rents and profits from the real estate in question. It therefore follows that she is entitled to an accounting of the rents and profits from this real estate for a period of not to exceed three years prior to the filing of this action, and the judgment of the lower court as modified herein is affirmed.