Jacqueline L. **BLAND**, a Minor by and through her Natural Guardian and Next Friend and Mother, Alberta Patterson, Plaintiff,

v.

Patricia Roberts **HARRIS**, Secretary of Health, Education and Welfare, Defendant.

Civ. A. No. 79–1339.

United States District Court, D. Kansas.

June 19, 1980.

James S. Phillips, Sr., Phillips & Phillips, Chartered, Wichita, Kan., for plaintiff.

James Buchele, U. S. Atty. for Kansas, and Kenneth L. Weltz, Asst. U. S. Atty., Wichita, Kan., for defendant.

### MEMORANDUM AND ORDER

WESLEY E. BROWN, District Judge.

This case is before the Court on Cross Motions for Summary Judgment.

Jacqueline L. Bland, a Minor, appeals through her guardian and mother (Plaintiff), from a decision of the Secretary of Health, Education and Welfare (HEW) denying her child's insurance benefits under Section 202(d) of the Social Security Act, 42 U.S.C.A. § 402(d).

Section 402(d) provides in part:

(1) Every child (as defined in section 416(e)) . . . of an individual who dies a fully or currently insured individual if such child—

(A) has filed application for child's insurance benefits,

(B) at the time such application was filed was unmarried and (i) either had not attained the age of 18 or was a full-time student and had not attained the age of 22, or (ii) is under a disability (as defined in section 423(d)) which began before he attained the age of 22, and

(C) was dependent upon such individual—

\* \* \* \* \* \*

(ii) if such individual has died, at the time of such death . . .

\* \* \* \* \* \*

shall be entitled to a child's insurance benefit for each month, beginning with the first month after August 1950 in which such child becomes so entitled to such insurance benefits . . . ..

Plaintiff testified she met Isaac Bland (Bland) in 1965, engaged in sexual relations on a continued basis for five months, became pregnant and Jacqueline was born in February of 1966.

She further testified that she notified Bland who told her he would accept the child and thereafter Bland made contributions in cash, food and clothing for Jacqueline until he entered the service in August of 1967.

According to Plaintiff she had a conversation with Bland before he left for Viet Nam, and he told her he would fill out necessary insurance papers and hospitalization to have Jacqueline secure. Plaintiff did not hear from Bland while he was in the service and was unable to contact him.

Plaintiff testified she signed Ex. 15 in which she states Bland was not living with Jacqueline or Plaintiff, nor was he contributing to their support. She and Bland never considered themselves man and wife. Plaintiff explained the statement by saying she did not write it or say some of the things contained in the Exhibit. The statement Exhibit 15 was signed May 23, 1978.

In support of her claim for Jacqueline, Plaintiff called Bland's mother, Irene Bland, who testified in support of her claim. Irene Bland said her son told her of Plaintiff's pregnancy the first month she was pregnant, that he was the father, and brought Jacqueline to her house. Irene Bland also said she had three letters from her son but she could not produce any of the letters.

There were also three affidavits in the record. These affidavits state Bland admitted being the father of Jacqueline and contributed to her support.

The record contains an application for dependency of a child and a certificate of award from the Veterans Administration.

Plaintiff filed her application for surviving child benefits (Ex. 1) on September 7, 1977. The application states that Jacqueline did not live with her father and was not supported by him. A birth certificate was issued by State of Oklahoma dated August 1977.

The ALJ found and the record supports that at time Plaintiff executed applications for benefits for Jacqueline she was an intelligent, competent well-educated person. She had work experience and had a job at the time of the hearings. She had two other illegitimate children in addition to a child by her present husband, Patterson, after Jacqueline's birth. She had waited 10 years to claim the benefits for her first child, Jacqueline.

The record also shows that Bland was married at Wichita, Kansas September 22, 1966 to Evelyn Gilman.

Exhibit 6 dated 9/7/77 signed by Plaintiff is a child relationship statement.

This Exhibit shows that the worker, Bland:

1. Did not make a statement to any governmental agency that the child was his.

2. Had not written letters stating the child was his.

3. Did not list the child in a Bible, as a dependent on a tax return, or make the child a beneficiary on an insurance policy.

4. Did not make a Will listing the child or make an allotment while in military service.

5. Did not list the child on an application for employment, register the child in school or church or take the child to dentist, doctors' office or hospital and list himself as a parent.

6. Did not accept responsibility for or pay child's hospital expenses or give information for child's birth certificate.

The birth certificate shows Jacqueline's birthplace as Oklahoma City, Oklahoma and her birthdate as February 17, 1966.

Plaintiff had no written evidence of any kind showing the child as the daughter of Bland but she did know of persons to whom Bland admitted he was the parent.

Plaintiff in September 1977 filed an application with the Veterans Administration for benefits for Jacqueline.

Exhibit 13 shows that a special determination was made by HEW that Jacqueline LaVern (Bland) did not meet the relationship and dependency requirements of the law.

Exhibit 14 shows that the Veterans Administration awarded benefits to Jacqueline.

The validity of HEW's denial of benefits to Jacqueline is determined by whether or not she is Bland's child as defined by the Act.

Section 416(h)(2) provides, in pertinent part:

(A) In determining whether an applicant is the child . . . of a fully or currently insured individual for purposes of this subchapter, the Secretary shall apply such law as would be applied in determining the devolution of intestate personal property by the courts of the State in which such insured individual . . . was domiciled at the time of his death . . . . . Applicants who according to such law would have the same status relative to taking intestate personal property as a child . . . shall be deemed such.

(B) If an applicant is a son or daughter of a fully or currently insured individual but is not (and is not deemed to be) the child of such insured individual under subparagraph (A), such applicant shall nevertheless be deemed to be the child of such insured individual if such insured individual and the mother or father, as the case may be, of such applicant went through a marriage ceremony resulting in a purported marriage between them which, but for a legal impediment described in the last sentence of paragraph (1)(B), would have been a valid marriage.

Section 416(h)(3) provides, in pertinent part:

An applicant who is the son or daughter of a fully or currently insured individual, but who is not (and is not deemed to be) the child of such insured individual under paragraph (2) of this subsection, shall nevertheless be deemed to be the child of such insured individual if:

\* \* \* \* \* \*

(C) In the case of a deceased individual—

(i) such insured individual—

(I) had acknowledged in writing that the applicant is his son or daughter,

(II) had been decreed by a court to be the father of the applicant, or

(III) had been ordered by a court to contribute to the support of the applicant because the applicant was his son or daughter,

and such acknowledgment, court decree, or court order was made before the death of such insured individual, or

(ii) such insured individual is shown by evidence satisfactory to the Secretary to have been the father of the appli-

cant, and such insured individual was living with or contributing to the support of the applicant at the time such insured individual died.

Based upon the foregoing facts and others shown by the record, the ALJ found:

1. At the time of birth of Jacqueline L. Bland, there was no valid marriage in existence between the deceased wage earner, Isaac Bland, and Jacqueline's mother, Alberta Tillman.

2. Under applicable state law, Jacqueline L. Bland does not qualify as the "child" of Isaac Bland for purposes of intestate succession.

3. The deceased wage earner, Isaac Bland, made no written acknowledgment of paternity to Jacqueline L. Bland.

4. There was no court order of paternity or support charged against Isaac Bland with respect to Jacqueline L. Bland.

5. Isaac Bland, deceased wage earner, neither lived with the applicant child or her mother, nor did he ever in fact support this child.

6. Jacqueline L. Bland is not entitled to child's insurance benefits as survivor of the deceased wage earner, Isaac Bland.

As we gather from Plaintiff's brief, HEW should be reversed because Plaintiff charges: 1) the ALJ did not give proper consideration to Irene Bland's testimony; 2) the ALJ misunderstood the testimony of the witnesses, affidavits and exhibits; 3) the ALJ's statements disclose a lack of fairness; and 4) that Plaintiff's lack of moral character cannot affect an innocent child. Specifically, Plaintiff contends the issues for review are:

1. Is the applicant, Jacqueline L. Bland, entitled to Child's Insurance pursuant to the provisions of Section 216(b) of the Social Security Act.

2. Is the Applicant, Jacqueline L. Bland's denial of Child's Insurance benefits violating her rights of equal protection of the laws guaranteed by the due process clause of the Fifth Amendment of the Constitution of the United States.

With respect to Plaintiff's issue No. 1, she contends that the ALJ did not follow Kansas law as required by the 416(h)(2)A, supra.

42 U.S.C.A. § 405(g) sets forth the perimeters of our review. Said section provides:

The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing.

Section 405(g) also provides:

The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . . .

In this regard we recognize that it is the function of the Secretary to weigh the evidence, resolve the conflicts and if the decision of Secretary is supported by substantial evidence, although conflicting evidence exists, it must be upheld.

The above standards governing our review dispose of Plaintiff's contention that the ALJ did not give consideration to Irene Bland's testimony ten years after the fact. Indeed, his job was to determine these evidentiary issues. He saw the witness and we will not disturb his analysis. We cannot infer a lack of fairness because of his conclusion that Irene Bland was befuddled.

The claim that the ALJ was using the morals of the mother to deny the child benefits is not shown by the record. The fact of the conduct of the mother can be considered by the Finder of Fact in determining her credibility without imposing any type of detriment to the child.

This brings us to the two issues listed above which Plaintiff contends show that Jacqueline was denied her rights because HEW did not apply Kansas law under 416(h)(2)A, supra. From this Plaintiff contends she was denied equal protection under the law.

We need not reach the constitutional claim because if HEW failed to follow the

law we can and should reverse the HEW decision as a matter of law.

The Kansas statute relied upon by Plaintiff concerns intestate succession. The portion of the statute (K.S.A. 59–501) which applies to this case reads

> . . . the word "children" . . . includes illegitimate children . . . where the father has notoriously or in writing recognized his paternity of the child, or his paternity thereof has been determined in his lifetime . . . in a court of competent jurisdiction. . . .

Plaintiff has cited the case of *Meyer v. Rogers*, 173 Kan. 124, 244 P.2d 1169, as showing the meaning of "notoriously" in recognizing paternity.

We do not challenge the facts recited in the case supporting the rights of an illegitimate child to inherit. The Kansas court there said:

> Defendants vigorously contend the most that can be said for all of this evidence is that it amounts to nothing more than "tongue-wagging gossip," and they rely upon language contained in the dissenting opinion in the case of *Smith v. Smith*, 105 Kan. 294, 182 P. 538, in which it was said that it must not be forgotten that what the statute deals with is not notoriety of paternity but notoriety of recognition of the child by the father— the one person who, under the statute, could confer heirship.
>
> As an abstract and purely academic statement of the law the rule contended for is of course correct, but in applying it to the facts before us we think defendants overlook the fact that this court does not weigh evidence and that where the trier of the facts finds certain things from conflicting evidence such findings will not be disturbed on appeal. We have examined this evidence in detail and are unable to say that the lower court's finding that plaintiff was the daughter of Vesper, and that his recognition of her as such was general and notorious within the meaning of our statute, is unsupported by competent evidence. (p. 129, 244 P.2d p. 1173.)

Neither do we challenge a similar case in which the court affirmed a finding which found that an illegitimate child did not establish paternity under K.S.A. 59–501. The Kansas court in *In re Estate of Case*, 180 Kan. 53, 299 P.2d 589 [1] stated:

> Assuming arguendo that the testimony of the witness to which we have last referred is entitled to be regarded as some evidence of notorious recognition of appellant being Lester Case's daughter all other evidence on that point was either conflicting or contradictory and the trial court, which had that duty and the opportunity to see and observe all witnesses, found against appellant on such factual issue. In that situation, under universal decisions of this jurisdiction (see, e. g., Hatcher's Kansas Digest [Rev.Ed.], Appeal & Error § 507; West's Kansas Digest, Appeal & Error § 1010[1], the rule is that factual findings made by a trial court supported by substantial competent evidence are conclusive between the parties and will not be disturbed on appellate review. (p. 58, 299 P.2d p. 593).

HEW has reviewed the claim of Plaintiff on four different occasions. In December 1977 there was a special determination that Plaintiff did not meet the relationship and dependency requirements of the law.

In July of 1978 after a request for a reconsideration, HEW determined with a detailed review of facts and a legal summary that Jacqueline cannot be deemed Bland's child.

Thereafter the ALJ heard the evidence, reviewed the exhibits and made his findings based upon such evidence. May 17, 1979 the Appeals Council of HEW affirmed the ALJ's determination.

Our review of all of the facts supports HEW's conclusion that Jacqueline is not entitled to child benefits under Title II of the Social Security Act.

We hold that HEW's findings are such that 416(h)(2)(A)(B) and (C) support the de-

---

1. For a brief history of KSA 59–501 see *In re Estate of McKay*, 208 Kan. 282, 491 P.2d 932.

termination that Jacqueline was not a "child" as defined therein or within the meaning of Kansas Statute 59–501 for the purposes of intestate succession.

The action of the Appeals Council of HEW is Affirmed.

It follows that Plaintiff's Motion for Summary Judgment is Denied and Defendant's Motion for Summary Judgment is Sustained.

IT IS SO ORDERED.